Terrance BRANNIGAN, Petitioner

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 30, 2005.
Decided Dec. 8, 2005.

Samuel A. Di Matteo, Philadelphia, for petitioner.

Michelle L. Chufe, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY President Judge COLINS.

As noted by the late Judge Theodore O. Rogers: "F. Scott Fitzgerald, chronicler of a less serious age than the present, observed that the bouquet of alcohol, not unseemly to a cavalry officer or bond broker, is altogether unfitting to a surgeon or clergyman." *Klink v. Unemployment Compensation Board of Review,* 5 Pa. Cmwlth. 62, 289 A.2d 494 (1972). In the instant matter, we must determine whether the same standards shall apply to all hospital employees.

Terrance Brannigan (Claimant) petitions for review of the order of the Unemployment Compensation Board of Review (Board), which reversed the decision of the referee granting him benefits. The Department of Labor and Industry issued a determination denying Claimant benefits based on Section 402(e.1) of the Unemployment Compensation Law (Law), 43 P.S.

§ 802(e.1),[1] dealing with failure to submit to a drug and/or alcohol test. The referee issued a decision granting Claimant benefits after a hearing during which Claimant, with counsel, and Thomas Jefferson University Hospital (Employer), represented by an unemployment compensation consultant and three witnesses, appeared. The Board reversed the referee. We affirm the Board.

Claimant was employed as a nursing assistant at a pay rate of $17.51/hour from May, 1997 until September, 2004. Employer had a policy under which employees may be given a drug or alcohol test as a result of suspicion of impairment due to drugs or alcohol. (Board's Findings of Fact Nos. 1–2.) The policy is entitled "Job Fitness Evaluations," and states that employees may be referred by their department for *suspicion of impairment* due to drugs or alcohol. This policy also specifies that refusal to consent to testing will be reported to the employee's supervisor and to Employee Relations and that further disposition will be at the department's discretion. (Employer Exhibit No. 4.) Employer also has a policy, entitled "Drug and Alcohol Policy," stating, *inter alia,* that no employee shall report to work under the influence of alcohol and that violators may be subject to disciplinary action, up to and including discharge. This policy further states that employees whose behavior indicates that they are unfit for duty may be referred for evaluation, which may include alcohol screening, although such a test is not required to establish a violation of the policy. (Employer Exhibit No. 2.)

Employer's Medical Director for University Health Services, Dr. Ellen O'Connor, a board-certified general internist and medical review officer (Medical Director), testified that on September 30, 2004, she received a phone call from the operating room nurse manager, who also appeared at the hearing, indicating that Claimant smelled of alcohol and had exhibited abnormal behavior. Because she suspected Claimant was impaired, and pursuant to Employer's policy, the nurse manager referred him for a "fitness for work evaluation." A nurse practitioner in the employee health office conducted the initial interview with Claimant and subsequently requested that the Medical Director examine him, validate her findings, and discuss the drug (alcohol screening) test with him. The Medical Director examined Claimant and testified that, based upon the smell of alcohol, she believed that he was impaired and, in order to complete her evaluation and prior to permitting him to return to duty, it would be necessary to verify his alcohol level. (N.T., at 14–16.)

At the hearing, Claimant testified that he drank three or four beers on the evening before, consumed the last beer at 12:30 AM, and had been unable to shower prior to leaving for work for the 10:00 AM shift. (N.T., at 30–31.) Claimant refused to take the alcohol screening test. At that time, the Medical Director reminded Claimant of an agreement he had previously signed with Employer and the fact that his refusal to take the test could result in his termination.[2] Claimant then requested

---

1. Section 402(e.1) of the Law, Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e.1), provides that an employee shall be ineligible for compensation in any week in which his unemployment is due to discharge or temporary suspension from work due to failure to submit

and/or pass a drug test conducted pursuant to an employer's established substance abuse policy, provided that the drug test is not requested or implemented in violation of the law or of a collective bargaining agreement.

2. On March 3, 2003, Claimant had reported to work smelling of alcohol. He was sent for

to speak with his union representative who, he testified, advised him not to take the test. In his testimony, Claimant denied that the Medical Director told him he could be terminated for failure to take the test, and stated rather that he thought she had told him that if he took the test and alcohol was detected, he could be terminated. (N.T., at 27.)

The referee concluded that Employer failed in its duty to demonstrate that Claimant was aware of the details of its substance abuse policy, which had been revised subsequent to the previous instance when Claimant had taken and failed an alcohol screening test. The referee further reasoned that Employer failed to follow the substance abuse policy itself, because there was no competent evidence that Claimant exhibited behavior indicating that he was unfit for duty.

The Board reversed the referee and found that Employer discharged Claimant for his refusal to submit to an alcohol test in accordance with its policy. (Board's Finding of Fact No. 14.) The Board noted that Claimant was aware of Employer's policy regarding drugs and alcohol, which states that employees may be given a test as a result of suspicion of impairment. The Board found credible Employer's testimony that Claimant smelled of alcohol when he arrived for work on September 30, 2004. This appeal followed.[3]

On appeal, Claimant argues that Employer presented no evidence, nor was he aware, that the drug and alcohol policy in effect at the time he was terminated made drug testing mandatory; thus, his refusal to take a test should not subject him to termination. He argues further that the smell of alcohol alone is insufficient to establish that he was intoxicated or unfit for his job duties, and therefore there was no violation of the drug and alcohol policy.

This Court has held that Section 402(e.1) of the Law requires an employer to demonstrate that it had adopted a substance abuse policy that was violated by the employee in order for that employee to be rendered ineligible for benefits. *UGI Utilities, Inc. v. Unemployment Compensation Board of Review*, 851 A.2d 240 (Pa. Cmwlth.2004). The Board made specific findings that (1) Employer did in fact adopt a substance abuse policy, and (2) such policy was violated by Claimant. In unemployment compensation proceedings, the Board is the ultimate factfinder and is empowered to resolve conflicts in the evidence and to determine the credibility of witnesses. *Kelly v. Unemployment Compensation Board of Review*, 776 A.2d 331 (Pa.Cmwlth.2001). Findings made by the Board are conclusive and binding on appeal if the record, when examined as a whole, contains substantial evidence to support those findings. *Id.*

We reject Claimant's argument that he should not be terminated for refusing a drug test because he was not made aware that a refusal could result in termi-

---

testing, which indicated a positive result. He admitted he had consumed alcohol the prior evening and agreed to enter an alcohol assistance program; he consented to random alcohol screenings for a period of one year, which period had expired prior to this incident. The agreement stated that it constituted a final warning regarding violation of Employer's drug and alcohol policy and that any future violation would result in his discharge. (Employer Exhibit No.3.)

3. Our review is limited to a determination of whether constitutional rights have been violated, whether an error of law has been committed, and whether all necessary findings of fact are supported by substantial evidence. *Kirkwood v. Unemployment Compensation Board of Review*, 106 Pa.Cmwlth. 92, 525 A.2d 841 (1987).

nation. The record is replete with evidence that he knew of the drug and alcohol policy. Claimant had been suspected of impairment previously and, at that time, had submitted to a blood screening test, and failed. He had signed an agreement specifying that any future violation of the drug and alcohol policy would result in termination. The Medical Director testified as to her conversation with Claimant regarding his refusal to take the test:

Q. Okay. After he told you he did not want to have the test, what did you say to him?

A. I told him that given his history, that this could result in termination, but we cannot force someone to be tested, that we needed his permission to be tested.

(N.T., at 15.) The Medical Director, who was found credible by the Board, adjudged Claimant to be impaired after detecting a strong smell of alcohol. At least two other employees, a nursing supervisor and a nurse practitioner, also reported that Claimant smelled of alcohol. Claimant's argument that the smell of alcohol alone is insufficient to establish that he was unfit for duty must also fail. This Court has held an employee can commit willful misconduct by arriving at work smelling of alcohol even if that employee does not drink at work and is able to perform all required duties. *Klink.*

In the case *sub judice,* where Claimant worked as a nursing assistant whose duties included running specimens, transporting patients, and scrubbing in during joint procedures to assist in the operating room (N.T., at 25), it is manifest that any suspicion of alcohol impairment must be acted upon.

In *Lindsay v. Unemployment Compensation Board of Review,* 789 A.2d 385, 390 (Pa.Cmwlth.2001), our Court held, "[T]he olfactory evidence that claimant imbibed intoxicating liquor before arriving for work, let alone Claimant's admissions to the same, is enough to support a finding of willful misconduct under Section 402(e) of the Law."

Under Employer's policy, an employee suspected of impairment due to alcohol could not be forced to submit to an alcohol screening test; however, such refusal would be reported to Employee Relations for further disposition and action. Claimant knew or should have known of this policy. The Board properly denied benefits in accordance with Section 402(e.1.) of the Law. Accordingly, the order of the Board is affirmed.

### ORDER

**AND NOW,** this 8th day of December 2005, the Order of the Unemployment Compensation Board of Review entered in the above-captioned matter is hereby **AFFIRMED.**