**ARCHITECTURAL TESTING, INC., Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 12, 2007.

Decided Jan. 24, 2008.

Kelly M. Knight, Harrisburg, for petitioner.

James K. Bradley, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge COHN JUBELIRER.

Architectural Testing, Inc. (Employer) petitions for review of an order of the Unemployment Compensation Board of Review (Board) reversing the decision of an Unemployment Compensation (UC) Referee (Referee) which denied benefits to George W. Yohe, II (Claimant) under Section 402(e.1) of the Unemployment Compensation Law (Law).[1] Employer argues that the Board misconstrued Section 402(e.1) of the Law, which relates to a claimant's ineligibility for benefits "due to failure to submit and/or pass a drug test conducted pursuant to an employer's established substance abuse policy." 43 P.S. § 802(e.1).

Claimant worked for Employer since November 2001. Claimant's position involved construction-type work on mechanical lifts at up to 60 feet in height, and in close proximity to other workers. (Referee Hr'g Tr. at 5.) Employer had an established substance abuse policy which stated in pertinent part:

> The use, possession, or distribution of alcohol or illegal drugs or the illegal distribution of legal drugs is not tolerated on company property, in company vehicles, or at any job site. Any employee aware of or suspicious of abuse to [sic] this policy is obligated to report the issue to management immediately.

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, added by Section 3 of the Act of December 9, 2002, P.L. 1330, *as amended,* 43 P.S. § 802(e.1).

. . . .

A drug & alcohol screening is performed for all newly hired employees and all employees involved in an accident in which property damage, personal injury, or the potential for personal injury has occurred. Additionally, *a drug & alcohol screening may be requested from any employee that demonstrates cause for concern regarding use of drugs or alcohol.*

*Any employee whose screening detects use of an illegal drug may be immediately terminated.* . . .

(Employer's Drugs, Alcohol, and Mental Fitness Policy, UC Service Center Ex. 13, R. Item No. 4 (emphasis added); *See* Referee Hr'g Tr. at 3, 5–8, 12, July 14, 2006.) On May 30, 2006, Employer discharged Claimant for failing to submit to a drug test.

Claimant applied for UC benefits, which the UC Service Center denied, finding that Claimant was ineligible under Section 402(e.1). Claimant appealed and, after a hearing, the Referee affirmed the denial of benefits. Claimant appealed to the Board, which reversed the Referee and granted benefits to Claimant. In its Decision and Order, the Board made the following findings of fact:

1. The claimant was last employed as a builder II with Architectural Testing, Incorporated, from November 25, 2001 to May 30, 2006, at an hourly rate of $14.50.

2. Pertinent language from the employer's policy manual relative to drugs, alcohol and mental fitness states, "Additionally, a drug & alcohol screening may be requested from any employee that demonstrates cause for concern regarding use of drugs or alcohol. Any employee whose screening detects use of an illegal drug may be immediately terminated. Any other drug or alcohol detection may result in appropriate disciplinary action, up to and including termination".

3. The claimant did undergo a drug screening test in December of 2005 after an accident. Henry Taylor, president of the employer (hereinafter "Taylor"), testified that said test was mandatory pursuant to the employer's policy manual. A minor accident occurred involving the claimant and he voluntarily submitted to a drug screen test, which initially was reported as invalid. The claimant was notified to retake the test, which he did; the specimen was negative for drugs and/or alcohol.

4. The employer testified that the events leading up to the claimant's termination on May 30, 2006 included the following: complaints from employees and customers relative to the claimant resulted in the [sic] Taylor feeling that he could require a drug screen test on the claimant because the aforementioned constituted cause for concern in his mind.

5. On May 30, 2006, the claimant was confronted by Dan Detzel (hereinafter "Detzel"), his supervisor, who told the claimant that he would be asked to take a drug test. Detzel also said that he had no reason to believe the claimant was on drugs.

6. Thereafter, when asked by Taylor to submit to a drug screen test, the claimant refused because he believed that he was being harassed.

7. Despite the employer having no written policy in place for disciplinary actions relative to an employee refusing to submit to a drug screen test, the claimant was still discharged.

8. Throughout the claimant's employment, he had not been disciplined.

Taylor testified that the claimant was a good employee and performed his job well.

(Board's Decision & Order, Findings of Fact ¶¶ 1–8.) The Board determined that because Employer's substance abuse policy did not provide for disciplinary action for an employee who refused to submit a drug test, Section 402(e.1) did not render Claimant ineligible for benefits. (Board's Decision & Order at 2.) The Board also found that Employer's concerns, which led to the drug test, "were based on speculation and hearsay reports." (Board's Decision & Order at 2.) The Board therefore reversed the Referee and granted benefits to Claimant. Employer now appeals to this Court.[2]

Employer argues that Claimant's refusal to submit to a drug test, despite an established policy known to Claimant allowing Employer to request a drug test upon reasonable grounds for suspicion, constituted willful misconduct under Section 402(e.1) of the Law. Section 402(e.1) states that a claimant will not be eligible for UC benefits if he is unemployed "due to failure to submit and/or pass a drug test conducted pursuant to an employer's established substance abuse policy...." 43 P.S. § 802(e.1). This case turns on the phrase "conducted pursuant to an employer's established substance abuse policy." The Board appears to interpret this phrase to mean that in order to terminate an employee for refusing a drug test, the employer must have an established policy which explicitly sets out the consequences for refusal of a drug test. However, this interpretation goes against the plain meaning of the Law.

■ Under the plain meaning of Section 402(e.1) of the Law, an employer's established substance abuse policy only needs to set forth when an employee may be required to submit to a drug test. This section, by its language, does not require the policy to set forth the consequences for refusal of a drug test. Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903(a), states "[w]ords and phrases shall be construed according to rules of grammar...." Looking at Section 402(e.1) grammatically, it is clear that the phrase "conducted pursuant to an employer's established substance abuse policy" modifies the term "drug test." This phrase does not refer to the refusal to take the test, or to the termination of employment. The Board's reading of the statute adds an extra requirement that does not appear in the text itself. Had the legislature wished to require that employers' substance abuse policies set forth the consequences for failure to submit or pass drug tests, it could have done so. Instead, it only required that the drug test be *conducted* pursuant to an established policy.

This Court has previously recognized that the enactment of Section 402(e.1) marked a change in the law:

Willful misconduct has long been construed to include the violation of a work rule, including a work rule prohibiting the use of drugs at the workplace.... It must be that the Legislature meant to effect some change in the Law when it

---

**2.** In an appeal of a decision of the Board, this "Court's review is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether a practice or procedure of the Board was not followed or whether the findings of fact are supported by substantial evidence in the record." *Western and Southern Life Ins.*

*Co. v. Unemployment Compensation Board of Review*, 913 A.2d 331, 334 n. 2 (Pa.Cmwlth. 2006). Additionally, the Board is the ultimate factfinder, empowered to make determinations as to witness credibility and conflicting evidence. *Peak v. Unemployment Compensation Board of Review*, 509 Pa. 267, 270, 501 A.2d 1383, 1385 (1985).

enacted Section 402(e.1). The Board's argument would render Section 402(e.1) mere surplusage; we are charged, however, to give effect to all the language in a statute. . . .

*UGI Utils., Inc. v. Unemployment Compensation Board of Review,* 851 A.2d 240, 245 (Pa.Cmwlth.2004) (citations omitted). In *UGI Utilities,* this Court held that the Board erred, in part, because the Board analyzed a discharge pursuant to an employee's failure of a drug test under Section 402(e), rather than 402(e.1). *Id.* This Court recognized that after the passage of Section 402(e.1), discharges pursuant to *failure* of a drug test should no longer be analyzed as if they were willful misconduct cases. *Id.* at 245–47.

■ The Board, in this case, is shoehorning the requirements of Section 402(e.1) into the older requirements of willful misconduct under Section 402(e). Under the willful misconduct provision, "willful misconduct . . . may be established by proof of an employee's deliberate violation of the employer's rules." *Rebel v. Unemployment Compensation Board of Review,* 692 A.2d 304, 306 (Pa.Cmwlth. 1997) (citing *Spiropoulos v. Unemployment Compensation Board of Review,* 654 A.2d 642 (Pa.Cmwlth.1995)). Under the Board's reading of Section 402(e.1)—that an employer must not only have an established substance abuse policy that allows for drug testing, but that also provides consequences for the refusal to submit to such testing—the requirements of Section 402(e.1) are essentially no different from Section 402(e). Indeed, in its Decision & Order, the Board is essentially applying the test for willful misconduct that was applied to drug testing cases prior to the enactment of Section 402(e.1). *Cf. Rebel* (analyzing claimant's refusal to submit to a random drug test by employer under Section 402(e)); *Lindsay v. Unemployment Compensation Board of Review,* 789 A.2d 385 (Pa.Cmwlth.2001) (discussing claim-

ant's failure of an alcohol test and arrival at work visibly intoxicated in the context of Section 402(e)); *Artis v. Unemployment Compensation Board of Review,* 699 A.2d 849 (Pa.Cmwlth.1997) (analyzing discharge of claimant for failure of a drug test under Section 402(e)); *Singleton v. Unemployment Compensation Board of Review,* 125 Pa.Cmwlth. 397, 558 A.2d 574 (1989) (discussing claimant's discharge for failure of a drug test under Section 402(e)). After *UGI Utilities,* this Court will not now analyze a discharge pursuant to *refusal* to take a drug test as if it were a willful misconduct case. To accept the Board's rule that in order to discharge an employee for refusal to submit to a drug test, the employer must have a substance abuse policy which explicitly provides for such discharge would render 402(e.1) redundant given that such a situation would already satisfy the requirements to show willful misconduct.

The Board's reading of the statute also leads to an absurd, unreasonable result. Section 1922(1) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(1), states that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." In this case, we are presented with an employer which has an established substance abuse policy providing for employee drug testing and for discharge of an employee for failure to pass a drug test. Under the Board's reading of Section 402(e.1), we would reach the absurd result where, in such a situation, an employee who knows he cannot pass a drug test may avoid discharge by simply refusing to take a drug test that the employer is attempting to conduct pursuant to its established substance abuse policy.

■ Therefore, we hold that in order for a claimant to be rendered ineligible for benefits under Section 402(e.1) of the Law, the employer need only have an estab-

lished substance abuse policy which permits it to conduct drug tests; the employer's policy need not explicitly state that an employee may be discharged for refusal to submit to such a test (although well-drafted policies will do so).

Employer also argues that the Board erred in dismissing as hearsay Taylor's testimony regarding complaints he received about Claimant's alcohol use and safety. Employer argues that these statements were not hearsay because they were not offered for the truth of the matter asserted. We agree.

 The Board urges that these statements are hearsay under the rule set forth in *Walker v. Unemployment Compensation Board of Review*, 27 Pa.Cmwlth. 522, 367 A.2d 366 (1976).[3] This would, of course, be the correct rule to apply if these statements were hearsay. However, they are not. A hearsay statement "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa. R. Evid. 801(c). Henry Taylor (Taylor), president of Employer, testified to statements made to him by two employees to the effect that these employees were concerned with Claimant's job performance and that he might be abusing alcohol.[4] (Referee Hr'g Tr. at 6). The matter asserted in these statements is that Claimant's job performance was sub par and that he was abusing alcohol. These statements were offered by Taylor

to show that he had cause for concern that Claimant might be abusing drugs. Because the statements were offered to show their effect on Mr. Taylor—that they led him to have cause for concern that Claimant was abusing drugs or alcohol—and not to show that Claimant actually *was* abusing drugs or alcohol, they were not offered for the truth of the matter asserted and are, therefore, not hearsay. *See, e.g., In re Shahan*, 429 Pa.Super. 91, 631 A.2d 1298, 1304 (1993) (stating, "[s]ince the statement was not admitted for its truth, but rather its effect on the listener, the statement was not hearsay.") Likewise, statements made by customers to Taylor that they had concerns regarding Claimant's safety on the job were not offered to show that the customers had concerns about Claimant's safety or that he was performing his job unsafely, but merely that Taylor had heard these statements and that he, therefore, had concerns himself regarding Claimant's safety. (*See* Referee Hr'g Tr. at 6.) Because these statements were not offered to show the truth of the matter asserted they are not hearsay and, therefore, the Board erred in not considering them.

Taking these statements into account, it appears that Employer had "cause for concern," or reasonable suspicion to request a drug test. In *Shaw v. Unemployment Compensation Board of Review*, 115 Pa. Cmwlth. 61, 539 A.2d 1383 (1988), this Court found that SEPTA had reasonable

---

3. In *Walker*, this Court stated:

 (1) [h]earsay evidence, *properly objected to*, is not competent evidence to support a finding of the Board.... (2) Hearsay evidence, *admitted without objection*, will be given its natural probative effect and may support a finding of the Board, *if it is corroborated by any competent evidence in the record*, but a finding of fact based *solely* on hearsay will not stand.

 *Walker*, 367 A.2d at 370 (emphasis in original) (citations omitted).

4. Specifically, Taylor testified that:

 I had three complaints from employees that had concerns about alcohol or—concerns with George Yohe's work there. Perhaps under the influence of alcohol. I said three employees [sic] complaints, actually, two of them were from the same employee. But I also had two customers complain of their concern about safety issues in George.

 (Hr'g Tr. 6.)

suspicion to request that the claimant in that case, a bus driver, submit to a drug test pursuant to SEPTA's policy where he had a history of attendance problems and failed to report a work-related injury until several days after it occurred. In making this finding, this Court noted that SEPTA was "responsible for the safe transportation of thousands of people each day." *Id.* at 1385. Likewise, in *Rebel*, in analyzing whether, under Section 402(e), an employer's drug testing program was a violation of that claimant's Fourth Amendment rights, the Pennsylvania Supreme Court stated:

> Upon weighing the employer's interest in the drug testing program against the burden to employees, we conclude that the program is a reasonable one. Appellant had an implied obligation, therefore, to comply.

> The employer has a strong interest in maintaining a workplace that is free from the influence of drugs. This is true of the entire work site, not just areas that are regarded as highly safety-sensitive. Employees who have consumed drugs can incur reductions in their productivity, reliability, and competency, thereby adversely affecting the employer's interests. In turn, interests of customers can be detrimentally affected as well. There are also overriding concerns of safety and liability. Workplace safety is obviously undermined by employees who are impaired in their physical and mental capacities. Not only are fellow workers endangered, but the public is likewise placed at risk. The avoidance of injury, as well as concern for vicarious liability that can accrue to the employer, are legitimate interests of the employer that must be accorded substantial weight.

*Rebel*, 555 Pa. at 120, 723 A.2d at 159.

■ In determining whether the Employer in this case had reasonable suspi-cion to request a drug test from Claimant, it is worth noting that Claimant's job involved heavy machinery and working at heights of up to 60 feet in close proximity to other workers. The consequences of Claimant's use of drugs or alcohol on the job, if such occurred, could be very grave. In this case it appears that Employer had at least as much grounds for reasonable suspicion to request a drug test as SEPTA did in *Shaw*. Here, Employer had reports from at least four people raising either their suspicions of Claimant's alcohol use or concerns regarding his safety on the job. (Referee Hr'g Tr. at 6.) Claimant had a minor accident on the job approximately six months prior. (Referee Hr'g Tr. at 5–6.) During the six months after that accident, Claimant was absent from work 14 days. (Referee Hr'g Tr. at 11.) Claimant admitted that one of these absences, which occurred the day after the Super Bowl, was due to a hangover. (Referee Hr'g Tr. at 11–12.) Given the dangerous nature of Claimant's job, this constitutes reasonable suspicion for Employer to request a drug test under its policy.

■ Section 402(e.1) states that an employee will not receive benefits when "his unemployment is due to discharge ... from work due to failure to submit and/or pass a drug test conducted pursuant to an employer's established substance abuse policy...." In this case, Employer had an established substance abuse policy which stated, "[a]dditionally, a drug & alcohol screening may be requested from any employee that demonstrates cause for concern regarding use of drugs and alcohol." (Employer's Drugs, Alcohol, and Mental Fitness Policy, UC Service Center Ex. 13, R. Item No. 4; Referee Hr'g Tr. at 7.) Employer believed it had cause for concern regarding Claimant's use of drugs and alcohol. Therefore Employer, pursuant to its established substance abuse poli-

cy, requested Claimant to submit to a drug test. Claimant refused. Claimant is therefore ineligible for benefits under Section 402(e.1) and we reverse the Order of the Board.

### ORDER

**NOW,** January 24, 2008, the Order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby **REVERSED.**

DISSENTING OPINION BY Judge SMITH–RIBNER.

I respectfully dissent from the majority's decision to reverse the order of the Unemployment Compensation Board of Review (Board) and to hold that George W. Yohe, II (Claimant) is ineligible for benefits under Section 402(e.1) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* added by Section 3 of the Act of December 9, 2002, P.L. 1330, 43 P.S. § 802(e.1). That provision relates to a claimant's ineligibility for benefits "due to failure to submit and/or pass a drug test conducted pursuant to an employer's established substance abuse policy...." The majority holds that a claimant is ineligible for benefits upon discharge for a refusal to submit to drug testing under an employer's "established" substance abuse policy that permits the employer to conduct drug tests and holds further that this policy "need not explicitly state that an employee may be discharged for refusal to submit to such a test (although well-drafted policies will do so)." 940 A.2d at 1282.

### I

Because the majority has engaged in its own fact finding and usurped the fact finding authority of the Board, I recite verbatim relevant findings made by the Board to support its decision that Claimant was not ineligible for benefits:

1. The claimant was last employed as a builder II with Architectural Testing, Incorporated, from November 25, 2001 to May 30, 2006, at an hourly rate of $14.50.

2. Pertinent language from the employer's policy manual relative to drugs, alcohol and mental fitness states, "Additionally, a drug & alcohol screening may be requested from any employee that demonstrates cause for concern regarding use of drugs or alcohol. Any employee whose screening detects use of an illegal drug may be immediately terminated. Any other drug or alcohol detection may result in appropriate disciplinary action, up to and including termination".

3. The claimant did undergo a drug screening test in December of 2005 after an accident. Henry Taylor, president of the employer (hereinafter "Taylor"), testified that said test was mandatory pursuant to the employer's policy manual. A minor accident occurred involving the claimant and he voluntarily submitted to a drug screen test, which initially was reported as invalid. The claimant was notified to retake the test, which he did; the specimen was negative for drugs and/or alcohol.

4. The employer testified that the events leading up to the claimant's termination on May 30, 2006 included the following: complaints from employees and customers relative to the claimant resulted in the [sic] Taylor feeling that he could require a drug screen test on the claimant because the aforementioned constituted cause for concern in his mind.

5. On May 30, 2006, the claimant was confronted by Dan Detzel (hereinafter "Detzel"), his supervisor, who

told the claimant that he would be asked to take a drug test. Detzel also said that he had no reason to believe the claimant was on drugs.

6. Thereafter, when asked by Taylor to submit to a drug screen test, the claimant refused because he believed that he was being harassed.

7. Despite the employer having no written policy in place for disciplinary actions relative to an employee refusing to submit to a drug screen test, the claimant was still discharged.

8. Throughout the claimant's employment, he had not been disciplined. Taylor testified that the claimant was a good employee and performed his job well.

The Board reasoned as follows to support its decision:

Specifically, the claimant was not discharged pursuant to a written employer policy relative to disciplinary action to take for an employee who refuses to submit to a drug screen test. Also, the employer's concerns were based on speculation and hearsay reports. The claimant's actions, not spelled out in an employer policy, can not be considered to rise to the level of willful misconduct, and based upon the employer's policy and the present record, the Board is constrained to allow benefits.[1]

Notwithstanding the Board's findings and its reasoning, the majority concludes that the Board's reading and application of Section 402(e.1) of the Law is no different than under Section 402(e), 43 P.S. § 802(e), and that its reasoning renders Section 402(e.1) redundant and leads to an absurd and unreasonable result. Similarly, the majority rejects the Board's findings, among others, that Claimant submitted to drug testing in December 2005, which produced a negative specimen; that the president of Employer, Henry Taylor, required a drug test based upon complaints from other employees and customers; that Claimant's supervisor told Claimant on the day of his discharge that he would be requested to take a test but that no reason existed to believe that he was on drugs; that Claimant believed he was being harassed when asked to take a test; that Claimant was discharged even though Employer had no written policy governing an employee's refusal of testing; and that Claimant had never been disciplined and according to Taylor was a good employee and had performed well. The majority finds, however, that employee statements made to Taylor indicated that Claimant's job performance was sub par and that he was abusing alcohol and that customer statements indicated concerns relative to Claimant's safety on the job. The majority then finds that the statements supported Employer's cause for concern that led it to request the drug test.

Employer argues, *inter alia,* that the circumstances here are analogous to those in *Brannigan v. Unemployment Compensation Board of Review,* 887 A.2d 841 (Pa. Cmwlth.2005), where the claimant refused to submit to the employer's drug and alco-

1. The Court's review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether the findings of fact are supported by substantial evidence in the record. *Leone v. Unemployment Compensation Board of Review,* 885 A.2d 76 (Pa.Cmwlth.2005). The Board is the ultimate fact finder, and it is empowered to determine witness credibility and evidentiary weight. *Peak v. Unemploy-* *ment Compensation Board of Review,* 509 Pa. 267, 501 A.2d 1383 (1985). Also, willful misconduct has been defined in part to include an employee's acts of wanton or willful disregard of an employer's interest, a deliberate violation of work rules and a disregard of the standards of behavior that an employer has a right to expect of its employees. *Orend v. Unemployment Compensation Board of Review,* 821 A.2d 659 (Pa.Cmwlth.2003).

hol test and the record was replete with evidence that the claimant was aware of the drug and alcohol policy and consequences for refusing to submit to testing. Employer further argues that Claimant failed to establish good cause for his refusal to submit to testing and that he merely proffered unsupported suspicions of harassment as the basis for his refusal. Employer cites *Rebel v. Unemployment Compensation Board of Review*, 692 A.2d 304, 308 (Pa.Cmwlth.1997), *aff'd*, 555 Pa. 114, 723 A.2d 156 (1998), where the Court noted that "the essence of disparate treatment is that similarly situated people are treated differently as a result of improper criteria." Employer asserts that as in *Brannigan* and *Rebel* it acted within policy guidelines when it sought the screening due to safety reasons and reports from others and that its interest in protecting the safety of employees and customers outweighs any allegations of harassment. Employer also contends, as the majority has found, that its decision was not made based upon speculation and hearsay because the reports it received regarding Claimant were not used to show the truth of his actual drug or alcohol use.

I agree with the Board that Claimant's refusal in this case to submit to drug and alcohol screening does not constitute willful misconduct in the absence of an established policy setting forth consequences of his refusal. Employer admitted that it had no policy setting forth the consequences of a refusal, and in addition it failed to produce competent evidence of Claimant's lack of fitness while at work. This matter is distinguishable from *Brannigan* where the employer had a specific policy informing employees of consequences for failing to take a test, whereas here Claimant was requested to take the test, according to the Board, at the whim of Employer. The Board views this case as one turning upon the absence of a policy and on Employer's contention that it has

wide latitude to impose consequences for Claimant's refusal of screening, unlike the situation, *e.g.*, in *UGI Utilities, Inc. v. Unemployment Compensation Board of Review*, 851 A.2d 240 (Pa.Cmwlth.2004). Discussions in *Brannigan, UGI Utilities* and in *Turner v. Unemployment Compensation Board of Review*, 899 A.2d 381 (Pa. Cmwlth.2006), *appeal denied*, 591 Pa. 669, 916 A.2d 636 (2007), all turned on whether drug test results or refusal of testing showed employer policy violations. There could be no violation here when Employer had no established policy with regard to a refusal.

As for the hearsay issue, the Board argues that the second prong of the hearsay rule enunciated in *Walker v. Unemployment Compensation Board of Review*, 27 Pa.Cmwlth. 522, 367 A.2d 366 (1976), applies because there was no objection to Taylor's hearsay testimony. Taylor's statements were not corroborated in any way, and *Walker* precludes the statements from being used as competent evidence. Taylor testified regarding what third parties not present at the hearing told him, with the out-of-court statements being offered for the truth of the matter asserted, and there is no exception to the hearsay rule that permits this testimony. The business records exception does not apply since Claimant's absentee record was not established as a business record, and his admission to overindulging and being unable to report to work on one remote occasion does not corroborate the hearsay. Employer did not prove that screening was warranted by any relevant events, and there is no evidence to show prior discipline of Claimant.

II

I disagree with the majority's decision as the Board's determination does not add another element to the text of Section

402(e.1) of the Law, which provides that an employee shall be ineligible for compensation for any week:

> In which his unemployment is due to discharge or temporary suspension from work due to failure to submit and/or pass a drug test conducted pursuant to an employer's established substance abuse policy, provided that the drug test is not requested or implemented in violation of the law or of a collective bargaining agreement.

The majority concludes that after *UGI Utilities* the Court will no longer analyze a discharge based upon refusal of drug testing as though it were a willful misconduct case and that it will henceforth recognize that under Section 402(e.1), a refusal of testing and the resulting discharge already satisfy willful misconduct requirements. The majority ignores the distinctions between the case *sub judice* and those decided under Section 402(e.1), and to buttress its position it cites cases, including *Rebel,* where claimants were discharged from employment for failing tests (*Artis v. Unemployment Compensation Board of Review,* 699 A.2d 849 (Pa.Cmwlth.1997); *Singleton v. Unemployment Compensation Board of Review,* 125 Pa.Cmwlth. 397, 558 A.2d 574 (1989)) or violating policy on being fit for duty (*Lindsay v. Unemployment Compensation Board of Review,* 789 A.2d 385 (Pa. Cmwlth.2001)). The majority would impose a strict liability standard under Section 402(e.1) neither expressed nor implied by its terms or supported by case law, and it consequently would deny benefits in each and every case where a claimant refuses drug testing, no matter what the cause, the reason or the circumstance. The majority fails to explain adequately why the Court should refuse to recognize the undeniable distinctions between the case *sub judice* and those where benefits were denied due to a refusal.

In *Brannigan* the Court explained that "Section 402(e.1) of the Law requires an employer to demonstrate that it had adopted a substance abuse policy that was violated by the employee in order for that employee to be rendered ineligible for benefits." *Brannigan,* 887 A.2d at 843 (citing *UGI Utilities* ). The Court affirmed the denial of benefits to the claimant, a nursing assistant, for his refusal to submit to a drug test pursuant to the employer's policy that allowed drug and alcohol testing of employees based on suspicion of impairment. The claimant reported to work smelling of alcohol and exhibiting abnormal behavior and refused an alcohol screening test. Unlike in the case *sub judice,* the policy provided that refusal to consent to testing would be reported to the employee's supervisor and to employee relations and that further disposition would be at the discretion of the department. The claimant argued that his refusal did not warrant discharge as he was unaware of the consequences, but the Board rejected the finding that the claimant was unaware of policy details. In affirming, the Court further observed:

> The Board made specific findings that (1) Employer did in fact adopt a substance abuse policy, and (2) such policy was violated by Claimant. In unemployment compensation proceedings, the Board is the ultimate factfinder and is empowered to resolve conflicts in the evidence and to determine the credibility of witnesses. Findings made by the Board are conclusive and binding on appeal if the record, when examined as a whole, contains substantial evidence to support those findings.

*Id.,* 887 A.2d at 843 (citation omitted).

In *Rebel* the employer had an express random drug and alcohol testing policy. The case involved a discharged management level employee who refused random drug and alcohol testing and was the only employee in his division (out of approxi-

mately 1300) who refused testing. All employees were subject to random testing, and, unlike the case *sub judice,* a supervisor explained to the employees that they would be subject to disciplinary action for refusing to comply with the policy. The claimant, an electrical engineer, performed duties in connection with a nuclear power plant, and although he argued that he had legal justification for refusing the drug test based upon privacy grounds, the Court held that the Board did not err in rejecting the claimant's good cause arguments and in denying benefits. Moreover, his discharge was not only for refusing the test but also for refusing to follow his supervisor's instructions, and the Court rejected the added claim of disparate treatment as no evidence existed to show that the claimant was treated differently from bargaining unit employees. That case is distinguishable.

In *UGI Utilities* the Court reversed the Board's refusal to deny the claimant benefits under Section 402(e) of the Law, 43 P.S. § 802(e). The Court rejected the argument that the employer failed to show that the claimant committed willful misconduct by violating a company substance abuse policy after submitting to random drug testing and being found positive for cocaine. She refused retesting and was then discharged. The policy provided that a positive test result would be reported to the designated human resources representative who might then inform appropriate management officials. The Board also agreed that the employer failed to provide sufficient evidence regarding the chain of custody, and it granted benefits. In reversing, the Court held that the Board erred in concluding that no difference existed between Section 402(e) (general provision denying benefits for violating work rule) and Section 402(e.1) (specific provision denying benefits for failing to pass test conducted under substance abuse policy so long as it was not requested or

implemented in violation of the law or of a collective bargaining agreement). The Court concluded that Section 402(e.1) required an employer to show that "it followed its established 'substance abuse policy' in discharging an employe for drug use on the job." *Id.,* 851 A.2d at 246.

In *Turner* the Court affirmed the denial of benefits and indicated that the case should be analyzed under Section 402(e.1) of the Law rather than under Section 402(e) where the claimant was terminated for drug use after failing a drug test. While the majority cited *UGI Utilities* as support, the case in *Turner* turned on violation of an employer's policy providing that a violation would subject the employees to discipline up to and including discharge subject to applicable provisions and procedures of the collective bargaining agreement. The claimant questioned on appeal whether his positive test results violated the policy, which prohibited employee use, sale and possession of illegal drugs while on duty and allowed for random testing. The Court rejected the claimant's arguments that the employer failed to prove a violation of the policy.

Specific policies existed in *Brannigan* and in *UGI Utilities,* and also in *Rebel,* that informed the employees of consequences of their refusal to take a drug test. As the Court concluded in *UGI Utilities,* Section 402(e.1) requires an employer to show that it followed "its established" policy in discharging an employee for drug use. If an employer does not have an established policy that informs the employees of the consequences of their refusal of testing, then it cannot show that it followed the policy when it discharged an employee for his/her refusal of drug testing. The majority fails to follow *UGI Utilities,* but it readily acknowledges that a "well-drafted" policy should inform employees that a refusal to take a drug test may result in discharge. Employer's policy

fails to inform its employees of consequences of refusing drug and alcohol screening. In reaching its determination, the Board reasonably interpreted Section 402(e.1) of the Law.

The fundamental basis for the Board's determination is that there was no *established* policy with respect to the consequences of Claimant's refusal to submit to drug and alcohol testing. Notably, the Board found that the supervisor advised Claimant that no reason existed to believe that he was on drugs, a finding that the majority ignores. As a consequence of the lack of an established policy, the Board could not presume that an employee knew that his or her refusal to take a test would result in discharge under the findings made. To meet the burden under Section 402(e.1) of the Law, an employer must prove that it has an established policy regarding an employee's refusal to submit to drug or alcohol testing, *i.e.*, it has a policy that is settled or fixed firmly, created or placed beyond doubt or dispute. *See* Black's Law Dictionary 586 (8th ed.2004) for the definitions of "establish." Employer did not meet that burden.

Finally, with regard to hearsay, I note the well-settled rule stated in *Walker*, containing guidelines for allowing hearsay in administrative proceedings:

(1) Hearsay evidence, *properly objected to,* is not competent evidence to support a finding of the Board.

(2) Hearsay evidence, *admitted without objection*, will be given its natural probative effect and may support a finding of the Board, *if it is corroborated by any competent evidence in the record*, but a finding of fact based *solely* on hearsay will not stand.

*Id.*, 367 A.2d at 370 (citations omitted) (emphasis in original). The Board applied the second prong of the *Walker* rule because there was no objection to Taylor's testimony regarding the hearsay statements of employees or customers. Because the statements were not corroborated, the Board correctly ruled that this evidence was not competent to support a finding.[2] As the ultimate fact finder, the Board had authority to decide all issues of credibility, and it found from Taylor's testimony that Claimant was a good employee and performed his job well and that he had not been disciplined during his almost five years of employment with Employer. The fact that hearsay statements may have been offered to show Taylor's state of mind was for the Board to find, not the majority. Because the Board did not commit an error of law nor make findings that were not supported by substantial evidence of record, its determination should be affirmed. I therefore dissent.

Judge FRIEDMAN joins in this dissent.

---

2. The Board noted Employer's failure to introduce Claimant's absentee record to fall within the exception to the hearsay rule. *See* Uniform Business Records as Evidence Act, 42 Pa.C.S. § 6108 (providing that written disciplinary record is admissible if made promptly upon report of the incident described and offered after authentication by a custodian of the records).