# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Felicia Davis, : 
               Petitioner : 
  : 
        v. : No. 1983 C.D. 2015
  : Submitted: February 12, 2016
Unemployment Compensation : 
Board of Review, : 
               Respondent :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**          **FILED: March 22, 2016**

      Felicia Davis (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board) denying her claim for unemployment compensation (UC) benefits under Section 402(e.1) of the Unemployment Compensation Law (Law).[1] The Board rejected Claimant's reasons for refusing her employer's request for drug testing as not credible. Claimant contends she was unable, under the circumstances, to comply with the request for a drug test. Claimant also asserts her employer failed to comply with the several details of its drug policy. We affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, added by the Act of December 9, 2002, P.L. 1330, 43 P.S. §802(e.1). Section 402(e.1) of the Law states an employee shall be ineligible for compensation for any week "[i]n which [her] unemployment is due to discharge or temporary suspension from work due to failure to submit [to or] pass a drug test conducted pursuant to an employer's established substance abuse policy, provided that the drug test is not requested or implemented in violation of the law or of a collective bargaining agreement." 43 P.S. §802(e.1).

## Background

The referee found the following relevant facts. Claimant worked for Tenet Health System Hahneman (Employer) as a laboratory representative 2 from April 2006 until her last day on February 9, 2015.

Employer has a drug/alcohol policy which: (1) defines standards of conduct for employees; (2) establishes procedures for testing of controlled substances and intoxicants; and, (3) sets out consequences for violations of the policy. Claimant received and acknowledged receipt of Employer's policies in March 2007. As such, Claimant knew or should have known of Employer's drug/alcohol policy.

On Friday, February 6, 2015, Employer received reports of Claimant leaving the restroom with a white powder under her nose. Employer also received reports of Claimant's erratic behavior in the workplace. Employer submitted the reports to its Human Resources (HR) Division. The following Monday, Employer received authorization to request that Claimant submit to a drug/alcohol test. Employer asked Claimant to report to the HR Division at the end of her shift. When Claimant reported, Employer requested that she submit to the drug/alcohol test based on reasonable suspicion.

Claimant informed Employer she could not comply with the urine test because she recently urinated. Employer asked Claimant to drink some water in order to provide a urine sample. Claimant declined the offer of water and informed Employer that she needed to pick up her grandchildren to take them to school.

2

Employer then requested that Claimant submit to a blood test. Claimant again replied that she could not do so because she needed to leave to pick up her grandchildren. By letter dated February 9, 2015, Employer discharged Claimant for violation of its drug/alcohol policy based on her failure to submit to testing.

In March 2015, Employer and Claimant's union agreed to a last chance agreement for Claimant. Employer asked that Claimant sign the agreement by March 26, 2015. However, Claimant did not sign the agreement. On March 26, Employer upheld Claimant's termination based on her failure to submit to testing in violation of Employer's drug/alcohol policy.

Thereafter, Claimant applied for UC benefits, which the local UC service center denied under Section 402(e.1) of the Law. The service center determined Employer met its burden of showing Claimant refused to submit to a drug/alcohol test conducted under an established substance abuse policy.

Claimant appealed, and the Board scheduled a referee's hearing. Claimant testified on her own behalf. Lynn SanSoucie (Supervisor), a laboratory supervisor, testified for Employer. Supervisor testified Employer terminated Claimant for refusing to submit to a drug test. Referee's Hr'g, Notes of Testimony (N.T.), 3/31/15, at 5. Employer's drug/alcohol policy permits reasonable suspicion testing. Id. Refusal to submit to drug testing can result in corrective action, including termination of employment. N.T. at 6. Claimant signed an HR form acknowledging receipt of Employer's policies. Id.

Supervisor testified Employer decided to request that Claimant submit to drug testing on Monday, February 9, 2015, for two reasons. N.T. at 6. First, an employee observed Claimant exit the bathroom the previous Friday with white powder under her nose and notified Supervisor. Id. Second, other employees observed Claimant's actions at various times that day and informed Supervisor that they suspected Claimant was on drugs. Id.

Supervisor further testified that on Friday she contacted her immediate supervisor, who, in turn, contacted HR. N.T. at 6. The following Monday morning, Supervisor received voicemail directions from Employer's HR Director to escort Claimant to "Worknet" for a urine drug screen. Id. Supervisor observed Claimant and told her to meet her at the end of the shift. N.T. at 7. At the end of her shift, Claimant came to Supervisor's room. Id. Noting other people were around, Supervisor told Claimant to get her coat and go with her to HR. Id.

On the way to HR, Supervisor informed Claimant that she was going to Worknet to take a urine drug test because other employees reported seeing her engaged in suspicious activity. N.T. at 7. Claimant started getting loud and replied that she just urinated and would not provide Supervisor with a urine test. Id. Supervisor then asked Claimant to talk about it and suggested that she drink some water and wait to take the urine test. Id. Claimant again stated that she could not stay and that she needed to pick up her grandchildren to take them to school. Id. Supervisor then requested that Claimant take a blood test, which would be quick. Id. Claimant refused and told Supervisor she would not give her any blood. Id. Supervisor then asked Rashida Conyers (Conyers), an employee, to be her

4

witness. Id. Claimant then repeated that she was leaving and that she would not take a drug test. Id. Supervisor further testified Claimant told her she could suspend or fire her. Id.

Supervisor then told HR what occurred. N.T. at 7. HR Director asked Conyers to write a witness notice and tell her what happened. Id. Conyers complied. Id.

Thereafter, HR decided at a meeting to terminate Claimant's employment by letter effective that day. N.T. at 8. Following Claimant's termination, her union became involved. Id. After a hearing, Employer agreed to offer Claimant an opportunity to continue working if she signed a last chance agreement, which would require drug testing for a period of time. Id. Claimant, however, refused to sign the agreement. Ultimately, Employer terminated Claimant for refusing drug testing and refusing to sign the last chance agreement. Id.

Claimant also testified regarding her refusal to submit to drug testing on Monday, February 9, and her later refusal to sign the last chance agreement. Claimant acknowledged her awareness of Employer's drug/alcohol policy. N.T. at 10. Claimant stated that when her shift ended on Monday morning, she needed to go home and take her three grandchildren to school. N.T. at 11. When Supervisor asked her to take a urine drug test, Claimant explained she just used the bathroom. Id. Claimant also testified she told Supervisor that she was not refusing the drug test, but that she needed to leave right away to pick up her grandchildren. Id.

5

Claimant also stated that Supervisor told her she would be suspended until she took a drug test.  Id.

When asked why she did not submit to a blood test, Claimant testified that she was "off the clock" and needed to take her grandchildren to school.  N.T. at 14.  Claimant recalled that there were three people waiting for blood tests and that she would have needed to wait her turn.  Id.  Claimant also asserted that she would have submitted to a drug test the next day, and if anything was in her system, it would still be there.  Id.

Further, Claimant testified she did not sign the last chance agreement Employer offered her because such an agreement is for an employee on drugs and she was not on drugs.  N.T. at 12.  Claimant believed that Employer's putting her into a drug program essentially amounted to an accusation that she had a drug problem, which she did not.  Id.  To that end, Claimant testified:  "I feel as though, for me to agree to that, I'm admitting to you that I'm on drugs, I'm not on drugs, I've never been on drugs, I just can't admit to something that I'm not on."  N.T. at 13.  In short, Claimant did not feel she should be drug tested for a whole year just because someone said something about her.  Id.

In addition, Claimant testified Employer did not follow its own drug/alcohol policy.  N.T. at 16.  Claimant asserted Employer's policy requires that two supervisors observe and question the employee before they request that the employee submit to testing.  Id.  Here, Supervisor never asked her if she was under

the influence of drugs before requested that she submit to a urine drug test. N.T. at 16-17.

Following the hearing, the referee issued a decision and order affirming the service center's determination of ineligibility under Section 402(e.1) of the Law. In her decision, the referee reasoned (with emphasis added):

> At the [UC] hearing, [Claimant] testified she failed to submit to the test due to urinating prior to reporting to the HR Division as she was unaware she was scheduled to submit to a drug test. [Claimant] further testified she did not have time to drink more water and wait to urinate as she needed to pick her grandchildren up. In addition, [Claimant] testified she was aware that failing to submit to a drug/alcohol testing could result in a discharge from employment.
>
> Based on the testimony received at the hearing, the Referee concludes that [Employer] has met its burden of proving that [Claimant's] fail [sic] to submit to the drug/alcohol test in violation of an established drug and alcohol policy; therefore, [Claimant] must be denied benefits under Section 402(e.1) of the Law.

Referee's Dec., 4/1/15, at 3.

On appeal, the Board affirmed. In so doing, the Board adopted and incorporated the referee's findings and conclusions. Additionally, the Board noted (with emphasis added):

> [Claimant] alleged that her refusal to submit to drug testing on February 9, 2015, was due to having to get home to get her grandchildren to school, and because she had recently just gone to the bathroom and could not supply a urine sample at the time. The Board does not

7

> find either of [Claimant's] reasons for refusing to be credible. [Claimant] was well aware that her refusal could lead to her discharge, which did in fact occur that same day.

Board Dec. at 1. Claimant petitions for review.[2]

## Discussion

### A. Argument

Claimant contends the Board erred in finding her ineligible for UC benefits under Section 402(e.1) of the Law because she never refused to take the drug test. Rather, Claimant testified she needed to leave so she could get her grandchildren to school. If Employer would have notified her earlier of the need to take a drug test, she could have made arrangements for her grandchildren, who are in her custody, and she could have taken the drug test. N.T. at 10-11.

In addition, Claimant observes, Section 402(e.1) requires that a drug test must be administered pursuant to "an employer's established substance abuse policy." 43 P.S. §802(e.1). Under Section 402(e.1), Claimant asserts, an employer must follow its drug policy in order to discharge an employee for drug use on the job. UGI Utils. Inc. v. Unemployment Comp. Bd. of Review, 851 A.2d 240 (Pa. Cmwlth. 2004). Here, Claimant argues Employer completely disregarded its policy.

---

[2] Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. Wise v. Unemployment Comp. Bd. of Review, 111 A.3d 1256 (Pa. Cmwlth. 2015).

8

First, Claimant asserts Employer's policy requires that a supervisor reasonably suspect an employee's drug use. In the present case, Supervisor did not observe, first hand, any behavior that would lead her to suspect Claimant was using drugs. Notably, Supervisor did not bring any of the witnesses who observed Claimant using drugs to the referee's hearing. Therefore, Claimant argues, Employer presented no evidence to show Supervisor had a reasonable suspicion that Claimant was using drugs.

Second, Employer's policy requires that the employee's supervisor get an opinion from another supervisor regarding the employee's condition. Here, Supervisor failed to get a second opinion from another supervisor.

Third, Employer's policy requires that the supervisor fill out a checklist documenting the employee's behaviors. Supervisor did not follow this step.

Fourth, Employer's policy requires that the supervisor immediately tell the employee of her behavior and have the employee escorted away from the work area. Here, Supervisor permitted Claimant to finish her entire shift before approaching her about the drug test.

Fifth, Employer's policy requires that Employer provide the employee with an opportunity to explain her behavior before the drug test is administered. Supervisor did not give Claimant this chance. Supervisor did not question Claimant or ask her to explain her behavior prior to requesting a drug test.

9

Sixth, Employer's policy requires that if both supervisors concur that a drug test is appropriate, the sample should be collected on-site when feasible or arrangements should be made to take the test off-site. Here, Claimant argues, it would have been feasible for Employer to have Claimant take the drug test at the beginning of her shift the next day. At that time, the alleged drugs would still be in her system.

In sum, Claimant argues, the evidence shows Employer disregarded nearly every step of its drug policy in asking Claimant to submit to a drug test. As such, Employer failed to meet Section 402(e.1)'s requirement that it follow its established substance abuse policy. Consequently, Claimant requests that we reverse the Board's order denying her UC benefits.

## B. Analysis

Section 402(e.1) of the Law states an employee shall be ineligible for UC benefits for any week in which her unemployment results from her failure to submit to or pass a drug test "conducted pursuant to an employer's established substance abuse policy," provided that the drug test is not requested or implemented in violation of the law or of a collective bargaining agreement (CBA). 43 P.S. §802(e.1). Pursuant to Section 402(e.1), an employer must demonstrate it had an "established substance abuse policy," and that the claimant violated it, in order to render the claimant ineligible for benefits for refusing or failing a drug test. Greer v. Unemployment Comp. Bd. of Review, 4 A.3d 733, 736 (Pa. Cmwlth. 2010). Under the plain meaning of Section 402(e.1), the employer's "established substance abuse policy" need only set forth when an

employee may be required to submit to a drug test. Architectural Testing, Inc. v. Unemployment Comp. Bd. of Review, 940 A.2d 1277, 1280 (Pa. Cmwlth. 2008) (*en banc*). Section 402(e.1) requires only that the drug test be conducted pursuant to an established policy. Id.

While not contesting the existence of an established policy or her awareness of it, Claimant first asserts she did not actually refuse the test. Rather, she was unable to take it under the circumstances. Before the referee, Claimant testified Employer confused her by requesting she take a drug test after her shift ended on Monday morning. N.T. at 10. Claimant needed to leave work immediately after she punched out to pick up her grandchildren and take them to school. N.T. at 11. Claimant also testified she could not provide a urine sample at that time because she just used the bathroom. Id.

The Board, however, specifically rejected as not credible Claimant's reasons for not submitting to the drug test. Bd. Dec. at 1. In UC cases, the Board is the ultimate fact-finder and is empowered to resolve all issues of witness credibility, conflicting evidence and evidentiary weight. Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review, 949 A.2d 338 (Pa. Cmwlth. 2008). Further, it is irrelevant whether the record includes evidence that would support findings other than those made; the proper inquiry is whether the evidence supports the findings actually made. Id. In addition, the party prevailing below is entitled to the benefit of all reasonable inferences drawn from the evidence. Id. Because the Board found Claimant's reasons for refusing Employer's request for a drug test not credible, we must conclude Employer established that Claimant violated its

11

substance abuse policy by refusing to submit to drug/alcohol testing. Greer; Architectural Testing.

Claimant also contends Section 402(e.1) requires that Employer must follow the details of its drug policy in order to discharge an employee for drug use on the job. UGI Utilities. Here, however, Claimant asserts Employer completely disregarded its policy. Therefore, Claimant argues the Board erred in denying her claim under Section 402(e.1).

Claimant's interpretation of UGI Utilities is too expansive, especially in a case such as this which deals with a refusal and therefore no actual drug test. In UGI Utilities, the claimant took a drug test, and test results showed a failure to pass the test. At issue was the quality of proof of the test results. This Court stated, "We agree that Section 402(e.1) requires an employer to show that it followed its established 'substance abuse policy' in discharging an employee for drug use on the job." UGI Utilities, 851 A.2d at 246. Claimant here relies on that language. That language, however, was not essential to our holding, which we summarized:

> To conclude, we hold that Section 402(e.1) of the Law requires an employer to demonstrate that it had adopted a substance abuse policy that was violated by the employee in order for that employee to be rendered ineligible for benefits. The terms of that policy may be trumped by a statute or collective bargaining agreement, but it is the claimant's burden to develop the record appropriately to succeed in that defense. However, Section 402(e.1) does not relieve an employer of laying a foundation for a drug test report. Here, Employer used the testimony of its human relations personnel to demonstrate chain of custody and foundation, *i.e.*,

12

> relevancy and authenticity, of the lab report showing Claimant's positive drug test results. Although irregular, once admitted, Employer's lab reports of Claimant's positive drug tests were entitled to be given probative value.

Id. at 252 (emphasis added). In short, we reject Claimant's reliance on UGI Utilities. This is because plucking *dictum* out of a decision that does not involve the same issue is not helpful in resolving this case.

Since UGI Utilities, this Court clarified its position. In the subsequent *en banc* decision in Architectual Testing, which, like the current case, involved a refusal for a drug test requested on the basis of reasonable suspicion, we explained:

> Therefore, we hold that in order for a claimant to be rendered ineligible for benefits under Section 402(e.1) of the Law, the employer need only have an established substance abuse policy which permits it to conduct drug tests; the employer's policy need not explicitly state that an employee may be discharged for a refusal to submit to such a test (although well-drafted policies will do so).

Architectual Testing, 940 A.2d at 1281-82 (emphasis added). Further, the Court held that reasonable suspicion to request a drug test could be proved in part by out-of-court statements by co-employees to an employer. Id. at 1282-83. That is the situation here.

This Court reiterated the limited burden on the employer in Greer. We stated that to establish a disqualification under Section 402(e.1), an employer need only show that it had an established substance abuse policy, and that the claimant violated it. Greer, 4 A.3d at 737 (citing UGI Utilities, 851 A.2d at 252,

the emphasized block quote above). If an employer meets this initial burden, a claimant is rendered ineligible for UC benefits unless she can demonstrate that the employer's substance abuse policy violates either the law or a CBA. Greer.

There is no question in this case that Employer had an established substance abuse policy which authorized testing based on reasonable suspicion. See Hr'g Record,[3] Claimant's Ex. #1 (Employer's drug/alcohol policy). Reasonable suspicion may be established by significant and observable changes in an employee's performance, appearance, behavior or speech. Id.

On Monday, February 9, 2015, Employer requested that Claimant submit to a drug test based on reports from employees that on the previous Friday she exited a bathroom with a white powder under her nose and that she engaged in erratic behavior in the workplace. F.F. Nos. 4, 8; N.T. at 6-7.

Upon receiving the reports of Claimant's erratic behavior, Supervisor contacted her supervisor, who contacted Employer's HR Division. F.F. No. 5; N.T. at 6. Thus, Employer acted in compliance with its drug/alcohol policy. See Claimant's Ex. 1 (Employer's drug/alcohol policy at 3). Although Claimant argues that a second supervisor must also observe the employee's suspicious behavior or characteristics, this is only required when the HR Department is closed. Id. Such was not the case here.

---

[3] Certified Record, Item No. 8.

14

The following Monday morning, Supervisor received authorization from HR Director to require Claimant to submit to a drug test. F.F. No. 6; N.T. at 6. Supervisor asked Claimant to meet her when she finished her shift. F.F. No. 7; N.T. at 7. When they met after Claimant's shift ended, Supervisor informed Claimant of the reports of her observed behavior and requested that she submit to a drug/alcohol test. F.F. No. 8; N.T. at 7. Based on the above facts, the referee, and ultimately the Board, determined Claimant refused Employer's requests that she provide a urine or blood sample for drug testing. Referee's Dec. at 3; Bd. Dec. at 1. Thus, Employer's initial burden under Section 402(e.1) of the Law was satisfied. Greer; UGI Utilities.

Claimant nonetheless argues Employer failed to follow several details in its drug/alcohol policy. However, the deficits about which Claimant complains are procedural in nature, pertaining to record-keeping, documentation, and safety in the workplace. Their relevance in a refusal case is not explained. More importantly, they do not rise to the level of a legal challenge that could overcome the adverse factual findings. This is because compliance with these details of the substance abuse policy is not part of the Employer's initial burden. Greer; Architectual Testing; UGI Utilities. Further, Claimant did not prove that the alleged failure to comply with the details of the policy constituted a violation of law or a violation of a CBA, the affirmative defenses available to a claimant under Section 402(e.1). Greer; UGI Utilities.

Discerning no error or abuse of discretion in the Board's order, we affirm.

_____
ROBERT SIMPSON, Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Felicia Davis,                             :
               Petitioner   :
                           :

        v.                          :   No. 1983 C.D. 2015
                           :
Unemployment Compensation      :
Board of Review,                       :
            Respondent   :

# **O R D E R**

**AND NOW**, this 22nd day of March, 2016, for the reasons stated in the foregoing opinion, the order of the Unemployment Compensation Board of Review is **AFFIRMED**.

 

_____
ROBERT SIMPSON, Judge