**DEPARTMENT OF LABOR AND INDUSTRY, Office of Unemployment Compensation Benefits, Petitioner**

**v.**

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 9, 2010.

Decided Aug. 11, 2010.

Robin H. Grenoble, Asst. Counsel for Employment Security and Jane C. Pomer-

antz, Chief Counsel, Harrisburg, for petitioner.

Carol J. Mowery, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

■ The Department of Labor and Industry, Office of Unemployment Compensation Benefits (Department) appeals from a decision of the Unemployment Compensation Board of Review (Board). The Board's decision affirmed a referee's determination that Joseph V. Creighton (Claimant) was entitled to Emergency Unemployment Compensation (EUC) benefits. In order to have qualified for EUC benefits in Pennsylvania, the claimant must have had base year wages at least equal to one and one-half times his highest quarterly wage. *McKenna v. Unemployment Compensation Board of Review*, 981 A.2d 415 (Pa.Cmwlth.2009).

Claimant filed for EUC benefits after exhausting his regular unemployment compensation benefits. The Department denied his request.[1] Upon review, Referee Sheila Mellon found Claimant eligible for EUC benefits in a decision dated July 27, 2009. This determination was appealed. The Board remanded the matter for the parties to submit additional evidence. The Board indicated "a Departmental repre-sentative ... shall provide ... a copy of the financial determination at issue, and explain the Department's rationale for denying EUC benefits." Reproduced Record (R.R.), at 57a. A hearing was held on remand whereupon additional testimony was presented. Thereafter, the Board found as follows:

— For the 2nd quarter of 2007, Claimant had wages of $59,876.00 with T–Mobile. This calculation included payment of a severance package totaling $57,404.00.

— For the 3rd quarter of 2007, Claimant received no wages.

— For the 4th quarter of 2007, Claimant earned $3,847.00 from Aircom International Inc. (Aircom).

— For the 1st quarter of 2008, Claimant had wages of $26,775.00 from Aircom.

■ The Board concluded Claimant had base year wages of $90,498.00. It further determined that 1.5 times Claimant's highest quarterly wage was $89,814.00.[2] It found Claimant eligible for EUC benefits as his total base year wages exceeded 1.5 times his highest quarterly wage. This appeal followed.[3]

■ The Department argues on appeal that the Board's determination is not supported by substantial, competent evidence. The Department asserts that although the Board correctly found Claimant's severance package should be included as wages in the 2nd quarter of 2007, the Board nonetheless found an incorrect amount in calculating Claimant's earnings for that quarter.[4] It contends that Claimant testi-

---

1. The Department's Financial Determination is not part of the certified record.

2. $59,876.00 × 1.5 = $89,814.00.

3. This Court's review in an unemployment compensation case is limited to a determination of whether constitutional rights were violated, errors of law were committed, or necessary findings of fact are not supported by substantial evidence. *Lee Hosp. v. Unemployment Compensation Board of Review*, 161 Pa. Cmwlth. 464, 637 A.2d 695 (1994).

4. There is no contention in this appeal that the Board incorrectly included Claimant's severance package as wages.

fied on two separate occasions that he earned $71,110.00 in the 2nd quarter of 2007. According to the Department, had the Board utilized this figure, Claimant's base year wages would have been $101,732.00. The Department posits that this monetary figure would not exceed 1.5 times $71,110.00, or $106,665.00.[5] Therefore, per the Department, Claimant should have been found ineligible for EUC benefits.

The record indicates Claimant testified that he believed his wages for the 2nd quarter of 2007 were $13,705.00. He agreed he received a severance package of approximately $57,000.00 during that quarter. He did not think the severance package should be used in calculating his entitlement to EUC benefits. He proffered that in the aggregate, he received either $71,000.00 or $77,000.00 in the 2nd quarter of 2007 from T–Mobile. The range is due to the fact he believed he worked two weeks into May while the pay stubs of record end in April. Claimant asserted the Department incorrectly utilized half of his earnings for each quarter to calculate whether he was entitled to EUC benefits.

At an October 20, 2009 hearing on remand, the Department presented the testimony of Emily Gilbert who stated that Claimant's earnings for the 2nd quarter of 2007 were $35,555.76. Ms. Gilbert agreed Claimant's severance package should be included as wages in calculating Claimant's base year wages. She explained, however, that "[t]he only severance package that was included was the second quarter of 2007, that was 35,555." R.R. at 70a. According to Ms. Gilbert, her calculations were determined relying on the wage information provided by Claimant's employers to the "Harrisburg Wage Record Department." Id. at 67a. Ms. Gilbert acknowledged that there are times when a

claimant's earnings are so great; i.e., over $100,000.00, that the earnings are split "to make each quarter equal." Id. at 67a. She denied that such action was necessary in the instant matter. Ms. Gilbert was unable to produce a copy of the Financial Determination. Claimant again stated at this hearing that his earnings for the 2nd quarter of 2007 were $71,000.00.

Included in the record is a pay stub from T–Mobile for the period ending April 7, 2007 that indicated Claimant was paid $2,472.00. A pay stub for the period ending April 21, 2007 showed Claimant received no pay, but was given a severance payout of $57,404.00.

 In unemployment compensation proceedings, the Board is the ultimate fact finder and it is empowered to resolve all conflicts in the evidence. Procito v. Unemployment Compensation Board of Review, 945 A.2d 261, 262, n. 1 (Pa.Cmwlth. 2008). See also Brannigan v. Unemployment Compensation Board of Review, 887 A.2d 841, 843 (Pa.Cmwlth.2005). When the record supports a finding of the Board, that finding is conclusive. Janicki v. Unemployment Compensation Board of Review, 79 Pa.Cmwlth. 411, 469 A.2d 713 (1984).

Upon review, we see no error in the Board's determination. There was a factual dispute presented by the parties concerning Claimant's earnings in the 2nd quarter of 2007. Claimant testified that he earned $13,705.00 during this period, not including the severance package he received. If his severance package was to be included in determining whether he was eligible for EUC benefits, Claimant suggested his earnings were between $71,000.00 and $77,000.00 for that quarter. Ms. Gilbert, on the other hand, testified

---

5. $71,110.00 × 1.5 = $106,665.00.

that Claimant earned $35,555.76 in the 2nd quarter of his base year. This monetary figure purportedly included Claimant's severance package. There was clearly a factual dispute concerning Claimant's earnings in the 2nd quarter of 2007. Consistent with *Procito* and *Brannigan*, the Board was to resolve the conflict in the evidence.

The Board chose to rely on the only evidence of record that it believed established Claimant's earnings with presumed accuracy. The record contained pay stubs from T–Mobile indicating Claimant was paid $2,472.00 from T–Mobile for the period ending April 7, 2007 and that he received a severance payout of $57,404.00. The sum of these two dollar amounts equals $59,876.00, the amount calculated by the Board to be Claimant's earnings for the 2nd quarter of 2007. This documentary evidence falls within an exception to the hearsay rule. It is competent evidence and sufficient to support the Board's ruling.[6] *Janicki.* To the extent the Department suggests these pay stubs are insufficient to reflect all of Claimant's earnings in the 2nd quarter of 2007, we note Ms. Gilbert had the opportunity to testify and present evidence. She was unable to present Claimant's initial Financial Determination as requested by the Board in remanding the case. Moreover, while she stated her calculations were based on information provided by Claimant's employers, she failed to present any evidence to support a determination that Claimant's earnings in the relevant quarter were greater than $59,876.00. Indeed, Ms. Gilbert's testimony was that Claimant's earnings in the 2nd quarter of 2007, that purportedly included the severance payout, were substantially less than this dollar amount.[7]

---

6. An exception to the hearsay rule for business records is contained in Pennsylvania Rule of Evidence 803(6) that states:

The following statements, as hereinafter defined, are not excluded by the hearsay rule, even though the declarant is available as a witness:

* * *

(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, ... unless the sources of information or other circumstances indicate lack of trustworthiness....

The consideration of evidence under the business records exception is within the discretion of the trier of fact. *Toth v. Workers' Compensation Appeal Board (USX Corp.)*, 737 A.2d 838 (Pa.Cmwlth.1999). It is not essential to produce either the person who made the entries or the custodian of the record at the time the entries were made or that the witness qualifying the business records even has personal knowledge of the facts reported in the business record. *Virgo v. Workers' Compensation Appeal Board (County of Lehigh–Cedarbrook)*, 890 A.2d 13 (Pa.Cmwlth. 2005). As long as there is a sufficient basis to justify a presumption of trustworthiness of the business records of a company, there is a sufficient basis to offset the hearsay character of the evidence. *Id.* at 20.

The pay stubs submitted into the record are out of court statements used for the truth of the matter asserted. They have elements of hearsay. Nonetheless, these documents were generated in the regular course of business by T–Mobile. There is no reason to doubt the trustworthiness of these records. *Virgo.* They are admissible regardless of whether the person who made the record is available to testify. *Id.* These pay stubs fall under the business records exception of the hearsay rule, Pa.R.E. 803(6), and may be relied upon as evidence by the Board. *Toth.*

7. This Court acknowledges, as pointed out by the Department, that Claimant consistently testified at two separate hearings that he earned $71,100.00 during the relevant quarter. There is evidence of record, however, to support the Board's finding regarding Claim-

Pursuant to *McKenna*, Claimant was eligible for EUC benefits based on the fact that he earned $59,876.00 during the 2nd quarter of 2007. Claimant earned the highest wages in the 2nd quarter of 2007, part of his base year. Multiplying $59,876.00 by 1.5 yields a product of $89,814.00. He had base year wages of $90,498.00. As his base year earnings exceeded 1.5 times his highest quarterly wage, Claimant qualified for EUC benefits.

The Department next contends that the Referee found Claimant's wages in the 2nd quarter of 2007 were $13,705.00. It asserts the Board failed to give any explanation for deviating from this finding. The Referee's finding was based on Claimant's testimony regarding his purported earnings in the 2nd quarter of 2007 that did not include the severance package. Ironically, the Referee's finding that Claimant earned $13,705 in the 2nd quarter of 2007 was below the amount calculated by the Department's own witness, Ms. Gilbert. Further, the Referee's calculation excluded Claimant's severance package. The Department agrees that Claimant's severance payout should be used in calculating Claimant's eligibility for EUC benefits. It seems counterintuitive that the Department would now take exception to the Board's departure from the Referee's finding on this issue. Regardless, the Board detected a conflict in the evidence and resolved that conflict based on evidence in the record. *Procito; Brannigan.* We see no reversible error.

The Department further contends that the Board adopted a "pick and choose" approach to calculating Claimant's base year earnings. Reply Brief, p. 3. It posits that the Board relied on Claimant's testimony in regard to his wages for the three remaining quarters of his base year, but ignored his testimony concerning the 2nd quarter of 2007. We point out that the Department has not challenged the Board's findings pertaining to Claimant's wages in any of the remaining quarters of Claimant's base year. Furthermore, the only quarter that was ever in any real dispute was the 2nd quarter of 2007. In light of this conflicting evidence, the Board states "it had no option but to closely examine the wage documentation supplied in order to make its own determination as to the exact amount of Claimant's second quarter wages." Respondent's brief, pp. 7–8. The fact that the Board's findings are consistent with Claimant's testimony regarding his wages in the 3rd and 4th quarter of 2007 and the 1st quarter of 2008, but not consistent with his testimony concerning his earnings in the 2nd quarter of 2007 is immaterial. This is particularly true as there is competent evidence of record to support the Board's findings subject to this appeal. *Janicki.*

After a review of the record, we conclude that the Board findings are supported by substantial, competent evidence. Accordingly, we affirm its order.

### ORDER

AND NOW, this 11th day of August, 2010, the order of the Unemployment

---

ant's wages in the 2nd quarter of 2007. That finding is conclusive. *Janicki.*

Further, it is not lost on this Court that half of $71,000.00 is $35,500.00. This seemingly gives credence to Claimant's theory that that the Department cut his earnings in half when calculating his eligibility for EUC benefits. This is so despite the fact that Ms. Gilbert testified that there was no need to "split" Claimant's earnings in the instant matter. Ultimately, however, the Board chose to rely on the pay stubs contained in the record to calculate Claimant's earnings in the 2nd quarter of 2007. There is evidence in the record to support its finding.

Compensation Review Board in the above-captioned matter is affirmed.