Scott H. JAEGER, MD, Petitioner

v.

**BUREAU OF WORKERS' COMPENSATION FEE REVIEW HEARING OFFICE (AMERICAN CASUALTY OF READING C/O CNA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 18, 2011.

Decided June 22, 2011.

---

Patrick M. Donan, Philadelphia, for petitioner.

W. Jeffrey Sidebottom and Joshua L. Schwartz, Lancaster, for intervenor American Casualty Company of Reading.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Scott H. Jaeger, M.D. petitions for review of an adjudication of the Bureau of Workers' Compensation, Fee Review Hearing Office, which authorized the insurer to reduce its payments to Dr. Jaeger for vertebral axial decompression [1] (VAX–D) treatments he rendered to the claimant, Misael Adame. The sole issue before this Court is whether the Bureau erred in determining that the insurer, American Casualty Company of Reading c/o CNA Insurance (CNA), complied with the Bureau's regulations when it changed Dr. Jaeger's billing codes for the VAX–D treatments to calculate his fee reimbursement. For the following reasons, we affirm.

Between May 30, 2007, and July 18, 2007, Dr. Jaeger provided 40 VAX–D treatments to Adame. Dr. Jaeger submitted three separate invoices to CNA: one for six treatments from May 30 to June 6; one for six treatments from June 11 to June 18; and one for 28 treatments from June 18 to July 19. On each of these invoices Dr. Jaeger assigned the VAX–D treatments Medicare Billing Code 97799, which is a "miscellaneous physical therapy" billing code.

By letters dated June 10, 2009, June 17, 2009, and September 21, 2009, CNA informed Dr. Jaeger that it was "downcoding" the VAX–D treatments to Code 97012, which is a "mechanical traction" procedure code. CNA explained that Code 97012 better described VAX–D treatments.[2] Each of CNA's letters included an explanation of review (EOR) and informed Dr. Jaeger that if he did not agree with the downcoding, he had to respond in writing within ten days. During the ten-day period following each letter, CNA sent partial payments to Dr. Jaeger for non-VAX-D procedures included on the bills in question, such as strapping and taping of the patient. When CNA did not receive a timely written response from Dr. Jaeger, it downcoded the VAX–D treatments to Code 97012 and sent him revised EORs on June 22, 2009, August 5, 2009, and October 2, 2009.[3]

Dr. Jaeger filed timely applications for fee review[4] pursuant to Section 306(f.1)(5) of the Workers' Compensation Act (Act).[5] The Bureau ruled in favor of Dr. Jaeger and awarded him an additional $10,749.78 for two of the invoices and an additional $50,212.42 for the third.

CNA requested a *de novo* hearing, which was held on July 28, 2010.[6] At the

---

**1.** VAX–D treatment is a non-surgical spinal decompression treatment for patients with low back pain. *Allen v. Bureau of Workers' Compensation Fee Review Hearing Office (Kemper Insurance),* 852 A.2d 415, 415 n. 1 (Pa.Cmwlth.2004).

**2.** Code 97012 reimburses less than Code 97799.

**3.** CNA reimbursed Dr. Jaeger $28.37 per session after it downcoded the VAX–D treatments. Reproduced Record at 168a (R.R. ____).

**4.** The fee review applications at issue were numbered 234908, 246111 and 240089 by the Bureau.

**5.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 531(5). In relevant part, it states:

A provider who has submitted the reports and bills required by this section and who disputes the amount or timeliness of the payment from the employer or insurer shall file an application for fee review with the department no more than thirty (30) days following notification of a disputed treatment or ninety (90) days following the original billing date of treatment.

77 P.S. § 531(5).

**6.** This hearing was consolidated with a review of Dr. Jaeger's fees submitted for VAX–D treatments rendered to a different workers' compensation claimant, Carmelo Olivares–Hernandez. An appeal of the Hearing Offi-

hearing, CNA offered the testimony of Barbara Mattioni, a Senior Operations Liaison with Coventry Healthcare's Workers' Compensation Division.[7] CNA also offered several documents into evidence, including copies of the invoices submitted by Dr. Jaeger, copies of the so-called "ten-day notices" and EORs, and various documents demonstrating that Code 97012 was the proper code for VAX–D treatments.

Mattioni testified regarding the ten-day notices sent to Dr. Jaeger. Mattioni stated that although the letters were prepared and mailed from Coventry's Tampa, Florida, office, they would have been marked with the return address of Coventry's King of Prussia, Pennsylvania office, where she works.[8] The letters were maintained as business records in Coventry's computer system. Dr. Jaeger did not assert that he did not receive the letters or that they were incorrectly addressed. Dr. Jaeger did not present any evidence.

█ On September 27, 2010, the Hearing Officer reversed the Bureau's initial decision. In doing so, the Hearing Officer credited Mattioni's testimony and concluded that Coventry's business records showed that the ten-day notices had been sent to Dr. Jaeger. The Hearing Officer also concluded that, based upon the revised EORs, the payments made to Dr. Jaeger by CNA prior to the expiration of the ten-day deadline did not represent payment for VAX–D treatments. The Hearing Officer concluded that CNA fol-

lowed proper procedures when it downcoded the VAX–D treatments. Dr. Jaeger now petitions for this Court's review.[9]

On appeal, Dr. Jaeger argues that the Hearing Officer erred. Dr. Jaeger contends that, contrary to the Hearing Officer's finding, CNA failed to prove that it complied with the Bureau's regulations when it downcoded the VAX–D treatments. Specifically, Dr. Jaeger asserts that: (1) CNA did not prove he was provided notice of its intent to downcode the VAX–D treatments and, in the alternative, (2) CNA improperly paid him for Adame's treatments before he had time to respond to the notice of downcoding. We disagree.

Section 306(f.1)(1)(i) of the Act, 77 P.S. § 531(1)(i), requires employers or their insurers to pay for medical services rendered to workers' compensation claimants. Medical service providers request payment for medical services by submitting a standardized Medicare claim form and listing the services rendered using standard Medicare billing codes along with the provider's fee for each service. The insurer then calculates the "proper amount of payment" for the treatments listed. 34 Pa. Code § 127.205. A provider's fees are generally capped at 113% of the Medicare reimbursement rate applicable in the Commonwealth. 34 Pa.Code § 127.101(a). If there is not a designated Medicare code for the treatment provided, the provider is reimbursed either 80% of the usual and

cer's determination in that case was recently reviewed by this Court in *Continental Casualty v. Bureau of Workers' Compensation Fee Review,* (Pa.Cmwlth., No. 2233 C.D. 2010, filed April 6, 2011).

7. CNA contracts with Coventry to perform its fee reviews under the Act.

8. Nothing in the record indicates the ten-day notices were ever returned to Coventry as being undeliverable.

9. Our scope of review in medical fee review cases is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the necessary findings of fact were supported by substantial evidence. *Pittsburgh Mercy Health System v. Bureau of Workers' Compensation, Fee Review Hearing Office (U.S. Steel Corp.),* 980 A.2d 181, 184 n. 4 (Pa.Cmwlth. 2009).

customary charge for the treatment or the actual fee charged, whichever is lower. 34 Pa.Code § 127.102.

Section 306(f.1)(3)(viii) of the Act, 77 P.S. § 531(3)(viii), allows an insurer to change, or "downcode," a provider's billing codes if the change is consistent with Medicare guidelines and the insurer has sufficient information to make the change after consulting with the provider. The Bureau has promulgated a regulation that establishes the procedure an insurer must follow to downcode a provider's bill. In relevant part, the regulation provides:

(a) Changes to a provider's codes by an insurer may be made if the following conditions are met:

(1) The provider has been notified in writing of the proposed changes and the reasons in support of the changes.

(2) The provider has been given an opportunity to discuss the proposed changes and support the original coding decisions.

(3) The insurer has sufficient information to make the changes.

(4) The changes are consistent with Medicare guidelines, the act and this subchapter.

(b) For purposes of subsection (a)(1), the provider shall be given 10 days to respond to the notice of the proposed changes, and the insurer must have written evidence of the date notice was sent to the provider.

(c) Whenever changes to a provider's billing codes are made, the insurer shall state the reasons why the provider's original codes were changed in the explanation of benefits....

(d) If an insurer changes a provider's codes without strict compliance with

subsections (a)—(c), the Bureau will resolve an application for fee review ... in favor of the provider....

34 Pa.Code § 127.207.

 A party aggrieved by the Bureau's resolution of a medical fee review may request a *de novo* proceeding before the Hearing Office. 34 Pa.Code § 127.259(a). During a fee review hearing, the insurer bears the burden of proving, by a preponderance of the evidence,[10] that it acted properly in downcoding or reimbursing the provider. 34 Pa.Code § 127.259(f). It is well-settled that the hearing officer is the fact-finder, and we will not reweigh the evidence or substitute our credibility determinations for those of the hearing officer. *Pittsburgh Mercy Health System*, 980 A.2d at 184–185; *Harburg Medical Sales Co. v. Bureau of Workers' Compensation (Employers Mutual Casualty Co.)*, 911 A.2d 214, 217 n. 10 (Pa.Cmwlth.2006).

 Dr. Jaeger first contends that CNA did not prove by a preponderance of the evidence that it strictly complied with the requirements of 34 Pa.Code § 127.207 because it did not prove that it sent him the required ten-day notice letters or that he received them. Dr. Jaeger overstates CNA's burden. The regulation requires only that insurers "have written evidence of the date notice was *sent* to the provider." 34 Pa.Code § 127.207(b) (emphasis added). Here, CNA introduced copies of the ten-day notices sent to Dr. Jaeger, each of which were dated. As the hearing examiner aptly noted, it is reasonable to "infer that [the letters] would not be in [Coventry's computer] system if they were never issued." H.O. Decision at 9, R.R. 174a. Thus, it is equally reasonable to

---

**10.** A preponderance of the evidence standard, the lowest evidentiary standard, is tantamount to a "more likely than not" inquiry.

*Commonwealth v. Assorted Consumer Fireworks*, 16 A.3d 554, n. 10 (Pa.Cmwlth.2011).

conclude that the letters, in conformance with the requirements in 34 Pa.Code § 127.207(b), were sent on the day they were dated.

■ In this same vein, Dr. Jaeger suggests that it was improper for the hearing officer to conclude that CNA sent him the ten-day notices because the copies proffered by CNA were unsigned and Mattioni, CNA's only witness, testified that she did not personally draft or mail them. Dr. Jaeger argues that the ten-day notices were inadmissible on hearsay grounds for the purpose of establishing that CNA sent him the notices.

In a fee review proceeding the hearing officer is not bound by the strict rules of evidence. 34 Pa.Code § 127.259(b). Nevertheless, in this instance, the copies of the ten-day letters proffered by Mattioni fell within Pennsylvania's hearsay exception for business records. PA. R.E. 803(6).[11] Accordingly, CNA was not required to produce the person who drafted the letters or the custodian of the letters at the time the entries were made, nor was CNA's qualifying witness required to have personal knowledge of the contents of the records. *Department of Labor and Industry v. Unemployment Compensation Board of Review*, 2 A.3d 1292, 1295 n. 6 (Pa.Cmwlth.2010). Instead, since the doc-

uments were generated in the regular course of business there is no reason to doubt their trustworthiness. *Id.*[12] Therefore, this argument lacks merit.

Dr. Jaeger also argues that CNA failed to prove that he received the ten-day notices because the notices were never mentioned during the Bureau's investigation of the matter in November of 2009. The Hearing Officer held a *de novo* hearing and created his own record; therefore, the Bureau's investigation is no longer relevant. The case was heard as if there was never a prior decision on the merits. 34 Pa.Code § 127.259(a); *Manor v. Department of Public Welfare*, 796 A.2d 1020, 1029 (Pa.Cmwlth.2002) (noting the reviewing body is in effect a substitute for a prior decision maker and hears the matter in its original jurisdiction). Focusing only on the record before the Hearing Officer, CNA proved, through Coventry's records and Mattioni's testimony, that CNA sent ten-day notices alerting Dr. Jaeger of its intent to downcode the VAX–D treatments.

■ Finally, Dr. Jaeger argues that CNA did not strictly comply with 34 Pa. Code § 127.207(b) because it issued payments for the VAX–D treatments before the ten-day period for contesting the

---

11. In relevant part, it provides:
 The following statements, as hereinafter defined, are not excluded by the hearsay rule, even though the declarant is available as a witness:
 **(6) Records of regularly conducted activity.** A *memorandum, report, record,* or data compilation, *in any form,* of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, *if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record,* or data compilation, all *as shown by the testimony of the* custodian or other *qualified*

*witness, . . . .* The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
PA. R.E. 803(6) (emphasis added).

12. We disagree with Dr. Jaeger's suggestion that the ten-day notices were less trustworthy because they were unsigned. There is no requirement in the Act or the Bureau's regulations that ten-day notices be signed and, in any case, the letters at issue here were not sent by an individual but were sent from "Bill Review Department, Coventry WC Services." *See* R.R. 89a, 96a, 107a.

downcoding had expired. We disagree. The record shows, and the Hearing Officer found, that the payments CNA issued within the ten-day period were for non–VAX–D charges on Adame's bills. Payments for those charges are not relevant to the downcoded VAX–D treatments. CNA took no action on the downcoded VAX–D treatments until well after the ten-day period expired and CNA had issued new EORs identifying the amount it would pay for the treatments.

The record in this case demonstrates that CNA complied with the Bureau's regulation at 34 Pa.Code § 127.207. At the hearing, CNA submitted copies of the ten-day notices and EORs it sent to Dr. Jaeger. The notices (1) explained to Dr. Jaeger that Code 97012 "better describes the procedure performed," (2) were dated, and (3) provided him ten days to dispute the downcoding decision. R.R. 89a–112a. Moreover, Mattioni's testimony and the additional documentation offered by CNA illustrates that CNA downcoded the VAX–D treatments based upon sufficient information regarding the accepted billing practices in the industry for this type of treatment.

Accordingly, we affirm the Hearing Officer's order reversing the Bureau's administrative determination with respect to Dr. Jaeger's fee review applications numbered 234908, 246111 and 240089. The Hearing Officer correctly concluded that the amount due to Dr. Jaeger for the VAX–D charges rendered to claimant Misael Adame was $0.00.

### ORDER

AND NOW, this 22nd day of June, 2011, the order of the Bureau of Workers' Compensation, Fee Review Hearing Office, dated September 27, 2010, in the above-captioned matter is AFFIRMED insofar as it reversed the administrative determination of the Bureau of Workers' Compensation in the Applications for Fee Review numbered 234908, 246111 and 240089 filed by Scott H. Jaeger, M.D.