## LEGION INSURANCE COMPANY c/o Inservco, Petitioner

v.

## BUREAU OF WORKERS' COMPENSATION FEE REVIEW HEARING OFFICE (FERRARA), Respondent.

### No. 828 C.D.2011.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 18, 2011.

Decided Jan. 10, 2012.

Publication Ordered May 8, 2012.

---

Michael D. Schaff, Philadelphia, for petitioner.

Patrick M. Donan, Philadelphia, for respondent Vincent Ferrara, MD.

1. This case was decided before Judge Butler's term ended on January 2, 2012.

2. Legion Insurance Company (In Liquidation) is insolvent, and its liabilities have been assumed by the Pennsylvania Security Fund.

BEFORE: McGINLEY, Judge, LEAVITT, Judge, and BUTLER, Judge.[1]

OPINION BY Judge LEAVITT.

Legion Insurance Company (In Liquidation)[2] (Insurer) petitions for review of an adjudication of the Bureau of Workers' Compensation, Fee Review Hearing Office (Hearing Office), holding that it must reimburse Vincent L. Ferrara, M.D., for vertebral axial decompression (VAX–D) treatments rendered to claimant Tammy Hudson. The sole issue is whether an insurer can deny a provider payment because the provider's invoice used a temporary, non-Medicare code, not found in the approved Pennsylvania Workers' Compensation Fee Schedule (Fee Schedule). Concluding that an invoice may not be denied on that basis, we affirm.

Between December 10, 2008, and December 30, 2008, Dr. Ferrara administered nine VAX–D treatments to Hudson. On February 10, 2009, Dr. Ferrara submitted an invoice to Insurer in the amount of $7,374.50 for these treatments. The invoice was submitted on an approved claim form and included all required supporting documentation. Dr. Ferrara used the code "S9090," which is a temporary, non-Medicare code recommended by a variety of sources, such as the PMIC *Coding Guide: Physical Therapy and Rehabilitative Medicine* (2008) and INGENIX, HCPCS Level II Expert (2007). Reproduced Record 7a–15a, 18a–22a (R.R. ___).

In response to Dr. Ferrara's invoice, Insurer issued an Explanation of Review (EOR) denying payment. The EOR stated that payment was denied because the code S9090 was not in the Commonwealth's approved Fee Schedule. R.R.

The Fund's third party administrator at the time this proceeding was commenced was Inservco, but it has been replaced by Comp-Services, Inc. For simplicity we refer to the liable party as "Insurer."

17a. Dr. Ferrara appealed to the Bureau, and on June 18, 2009, the Bureau found in favor of Insurer.

Dr. Ferrara requested a *de novo* hearing from the Bureau's Hearing Office, and it was held on January 5, 2011.[3] At the hearing both Insurer and Dr. Ferrara offered evidence in support of their respective positions. On April 6, 2011, the Hearing Office reversed the Bureau's determination and ordered Insurer to pay Dr. Ferrara $4,320.00[4] for the VAX–D treatments and 10% interest.[5] The Hearing Office concluded that using a code not recognized in the Fee Schedule was not fatal. Under the Pennsylvania Department of Labor and Industry's (Department) regulations, Insurer could have compensated Dr. Ferrara at 80% of the usual and customary charge for the treatment or downcoded his fee to an appropriate code in the approved Fee Schedule. The Hearing Office held that Insurer did not prove that it properly denied payment to Dr. Ferrara, and Insurer petitioned for this Court's review.[6]

On appeal, Insurer claims that the Hearing Office abused its discretion. Insurer argues that because Dr. Ferrara did not code the VAX–D treatments in accordance with the Fee Schedule, his invoice was invalid. Insurer reasons that once it informed him the S9090 code was improper, Dr. Ferrara should have simply resubmitted his invoice instead of filing a fee review. Insurer claims that because Dr. Ferrara's submission did not contain a proper code it could not downcode the VAX–D treatments. Finally, Insurer suggests that Dr. Ferrara's inaction was intended to avoid downcoding and, thus, receive a larger reimbursement.

Section 306(f.1)(1)(i) of the Act, 77 P.S. § 531(1)(i), requires employers to pay for medical services rendered to workers' compensation claimants. Medical service providers must use standardized claim forms and use the codes in the Department's Fee Schedule. 34 Pa.Code § 127.201. These codes are developed nationally by the Health Care Financing Administration and statewide by local Medicare carriers. *See* 34 Pa.Code § 127.3.[7]

Generally, a provider cannot be paid more than 113% of the Medicare reim-

---

**3.** A party aggrieved by the Bureau's decision on a medical fee review may request a *de novo* proceeding before the Hearing Office. 34 Pa.Code § 127.259(a). During a fee review hearing, the insurer bears the burden of proving, by a preponderance of the evidence, that it acted properly in downcoding or reimbursing the provider. 34 Pa.Code § 127.259(f).

**4.** $4,320.00 represents 80% of Dr. Ferrara's fee for VAX–D treatments.

**5.** Interest for unpaid medical invoices is authorized by Section 406.1 of the Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, added by Section 3 of the Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. § 717.1 and 34 Pa.Code § 127.210(a).

**6.** Our scope of review in medical fee review cases is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the necessary findings of fact were supported by substantial evidence. *Jaeger v. Bureau of Workers' Compensation Fee Review Hearing Office (American Casualty of Reading c/o CNA)*, 24 A.3d 1097, 1100, n. 9 (Pa.Cmwlth. 2011).

**7.** The Department defines the "HCPCS–HCFA Common Procedure Coding System," as "[t]he procedure codes and associated nomenclature consisting of numeric CPT–4 codes, and alphanumeric codes, as developed both Nationally by HCFA and on a Statewide basis by local Medicare carriers." 34 Pa. Code § 127.3. "CPT4 codes" are defined as those codes proffered by "[t]he physician's 'Current Procedural Terminology, Fourth Edition,' as defined and published by the American Medical Association. *Id.*

bursement rate for a particular treatment. 77 P.S. § 531(3)(i); 34 Pa.Code § 127.101(a). Where there is no Medicare code for the treatment provided, the provider will be reimbursed 80% of the usual and customary charge for the treatment or the actual fee charged, whichever is lower. 34 Pa.Code § 127.102. The employer may "downcode" the provider's billing code where the change is consistent with Medicare guidelines and the insurer has sufficient information to make the change after consulting with the provider. *See* 34 Pa. Code § 127.207.[8]

Here, there is no question that the S9090 code used by Dr. Ferrara is not a recognized Medicare code; however, there is no specific Medicare code for VAX–D treatments. *See, e.g., Jaeger v. Bureau of Workers' Compensation Fee Review Hearing Office (American Casualty of Reading c/o CNA,* 24 A.3d 1097, 1099 (Pa.Cmwlth.2011)(physician used 97799, a miscellaneous physical therapy code for VAX–D treatments, which insurer downcoded to 97012, a mechanical traction code)). Insurer argues that, *ipso facto,* using a code not in the Fee Schedule results in an incomplete invoice that can be denied. Insurer provides no authority to support this contention, and it conflicts with the Department's regulation.

Section 127.102 of Title 34 of the Pennsylvania Code states:

> *If a Medicare payment mechanism does not exist for a particular treatment,* accommodation, product or service, *the amount of the payment made to a health care provider shall be either 80% of the usual and customary charge* for that treatment, accommodation, product or service in the geographic area where rendered, *or the actual charge,* whichever is lower.

34 Pa.Code § 127.102 (emphasis added). This language is quite clear. If a "Medicare payment mechanism" does not exist for a treatment, the provider will still be paid. Dr. Ferrara used a widely recognized code to classify his treatment because there was no code in the Fee Schedule. This did not render Dr. Ferrara's invoice incomplete or leave Insurer without a remedy, *i.e.,* payment of 80% of the usual and customary charge.

Insurer's argument that it could not downcode the VAX–D treatments because Dr. Ferrara did not use the proper code is not persuasive. The evidence showed that the S9090 code is widely used for VAX–D treatments, and the information on Dr. Ferrara's invoice plainly identified the treatments as VAX–D treatments. Given that information, Insurer could have down-

---

**8.** In relevant part, the regulation provides that:

  (a) Changes to a provider's codes by an insurer may be made if the following conditions are met:

    (1) The provider has been notified in writing of the proposed changes and the reasons in support of the changes.

    (2) The provider has been given an opportunity to discuss the proposed changes and support the original coding decisions.

    (3) The insurer has sufficient information to make the changes.

    (4) The changes are consistent with Medicare guidelines, the act and this subchapter.

  (b) For purposes of subsection (a)(1), the provider shall be given 10 days to respond to the notice of the proposed changes, and the insurer must have written evidence of the date notice was sent to the provider.

  (c) Whenever changes to a provider's billing codes are made, the insurer shall state the reasons why the provider's original codes were changed in the explanation of benefits....

  (d) If an insurer changes a provider's codes without strict compliance with subsections (a)—(c), the Bureau will resolve an application for fee review ... in favor of the provider....

34 Pa.Code § 127.207.

coded to another code in the Fee Schedule, as allowed by 34 Pa.Code § 127.207. *See, e.g., Jaeger,* 24 A.3d at 1099.

In sum, the use of a widely used code by a provider, albeit not included in the Fee Schedule, does not render the provider's submission incomplete or improper, such that payment may be summarily denied. Rather, insurers have two courses of action: (1) they can pay the lower of 80% of the usual and customary charge or the actual charge; or (2) they can downcode to an approved code. Insurer failed to do either and, instead, tried to avoid paying Dr. Ferrara, which was impermissible under the Act and the regulation.

Accordingly, we affirm the Hearing Office.

### ORDER

AND NOW, this 10th day of January, 2012, the order of the Bureau of Workers' Compensation, Fee Review Hearing Office, dated April 6, 2011, in the above-captioned matter is AFFIRMED.