# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

New York Marine and General            :
Insurance Company and Cannon           :
Cochran Management Services Inc.,       :
                         Petitioners    :
                                        :
            v.                          :  No. 860 C.D. 2018
                                        :  Argued:  April 11, 2019
Bureau of Workers' Compensation        :
Medical Fee Review Hearing             :
Office (Lam),                          :
                         Respondent     :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER                    FILED: May 2, 2019


New York Marine and General Insurance Company and Cannon Cochran Management Services Inc. (together, Insurer) petition for review of the Order of the Bureau of Workers' Compensation Medical Fee Review Hearing Office (Bureau), issued by Medical Fee Review Hearing Officer David Torrey (HO Torrey), that granted the Requests for Hearing to Contest Fee Review Determination (Requests) filed by Sofia Lam, M.D. (Provider). HO Torrey found that Insurer did not prove it properly reimbursed Provider for the ultrasound-guided lumbar injections (Injections or Treatment) Provider rendered to Isaam Pinckney (Claimant) where Insurer denied payment without making any effort to downcode (apply a different Billing Code) that Treatment. On appeal, Insurer

argues it had no obligation to downcode or pay for the Treatment because the Treatment has no corresponding Billing Code under Medicare. Insurer further argues that, because the Injections are not approved by the Food and Drug Administration (FDA), it is not liable to pay for them and, therefore, HO Torrey exceeded the scope of his jurisdiction when he found it was liable. Upon review, we affirm.

Provider treated Claimant for work-related injuries to his back with Injections on January 20, 2017, and March 17, 2017. She submitted separate invoices to Insurer for those Injections. (HO Torrey Determination, Finding of Fact (FOF) ¶ 2.) Each invoice was submitted on an approved Health Insurance Claim Form, which provided a diagnosis code and separate Billing Codes for the office visit and the Injections, the latter of which was given Billing Code 64999, which describes the services provided as "unlisted procedure of the nervous system." (Reproduced Record (R.R.) at 19a, 46a, 67a; Insurer's Brief (Br.) at 11.) The January 20, 2017 invoice was accompanied by an office note by Provider explaining the Treatment and a letter from Provider to Claimant's referring physician about Provider's examination of Claimant and plan to treat Claimant with the Injections. (R.R. at 20a-23a.) The office note not only explained the Treatment, but also described the type of needle used and medications injected into Claimant's back. The charge for the January 20, 2017 Injection was $1950. (*Id.* at 19a.) The March 17, 2017 invoice was accompanied by an office note explaining the Injection provided that date. (*Id.* at 47a.) The charge for the March 17, 2017 Injection was $1890. (*Id.* at 46a.)

2

Insurer denied payment for the Treatment.[1]  In its denial of payment for the January 20, 2017 Injection, Insurer requested that Provider "please submit an itemized billing to ensure accurate processing."  (*Id.* at 26a.)  In its denial of payment for the March 17, 2017 Injection, Insurer stated "please re-submit with the appropriate [Billing Code]." (*Id.* at 50a.)

After receiving the denials, Provider filed Applications for Fee Review (Applications) pursuant to Section 306(f.1)(5) of the Workers' Compensation Act,[2] 77 P.S. § 531(5), challenging Insurer's nonpayment.  The first level Fee Review Office denied the Applications because the Workers' Compensation (WC) fee calculation for a treatment with the Billing Code of 64999, as Injections were coded here, was $0.00.  Therefore, "the amount due to the [P]rovider [was] $0.00" because the "[d]ocumentation does not support the billed service(s)." (R.R. at 29a-32a, 58a-61a.)

Provider then filed the Requests, seeking a de novo hearing on Insurer's nonpayment.  The Requests were assigned to HO Torrey, who held a hearing on April 19, 2018.  In support of its decision not to pay for the Injections, Insurer offered the Fee Review Office decisions and rested its case.  (*Id.* at 91a-93a.) Provider offered, for each fee dispute, the invoice, Provider's supporting materials, and Insurer's explanation for denying payment.  (*Id.* at 93a-94a.)  Provider noted that the Fee Review Office decisions were not precedential or binding because the matter was being heard de novo by HO Torrey. (*Id.* at 94a-95a.)

---

[1] Insurer paid for the January 20, 2017 office visit in part and paid the entire amount listed in the invoice for the March 17, 2017 office visit.  Provider did not challenge Insurer's partial payment of the January 20, 2017 office visit.

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 531(5).

HO Torrey issued his decision on May 29, 2018, finding that Insurer did not meet its burden of proving that it properly reimbursed Provider for the Treatment given to Claimant. HO Torrey rejected Insurer's arguments, raised for the first time in the de novo proceeding, that it did not have to pay because the Injections are not approved by the FDA, there was no Medicare Billing Code for that Treatment due to its unapproved status, and, without a Medicare Billing Code, there is nothing in the WC Fee Schedule setting the amount of payment for that Treatment. (FOF ¶ 6.) HO Torrey further rejected Insurer's contention that he had "no jurisdiction even to hear the present case" because fee review proceedings could not be used to decide liability issues. (*Id.*) HO Torrey found Insurer's arguments to be "puzzling and abstract" and "non-cognizable." (*Id.*) HO Torrey explained that had Insurer "not believe[d] that 64999 was appropriate, it should have downcoded and proposed a better procedure code which was more appropriate." (*Id.*) Noting there was no evidence that, prior to denying payment for the Injections, Insurer made any attempt to downcode the Treatment, HO Torrey found that Insurer did not meet its burden of proof. (*Id.* ¶¶ 5-7.) Therefore, HO Torrey granted the Requests and directed Insurer to pay Provider for the Injections. Insurer now petitions this Court for review.[3]

On appeal, Insurer argues that HO Torrey erred in placing the burden on it to downcode Provider's bills where it had no obligation to do so and where Provider intentionally used Billing Code 64999, due to the Injections having no specific

---

[3] This Court's "review in medical fee review cases is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the necessary findings of fact were supported by substantial evidence." *Jaeger v. Bureau of Workers' Comp. Fee Review Hearing Office (Am. Cas. of Reading C/O CNA)*, 24 A.3d 1097, 1100 n.9 (Pa. Cmwlth. 2011).

4

Billing Code under Medicare. As the corresponding WC allowance for Billing Code 64999 is $0.00, Insurer argues this was the amount for which it was responsible. It notes the Injections for which Provider seeks payment are not FDA-approved and, as such, are not Medicare-priced. Because the WC Fee Schedule in Pennsylvania is based on a percentage of the Medicare price, Insurer argues the lack of Medicare pricing renders the appropriate payment for the Injections zero. Further, Insurer argues, by requiring it to pay for unapproved Injections, HO Torrey impermissibly made a liability determination thereby exceeding his jurisdiction in this fee review proceeding. (Insurer's Br. at 13 (citing *Catholic Health Initiatives v. Health Family Chiropractic*, 720 A.2d 509, 511-12 (Pa. Cmwlth. 1998)).)

Provider responds that Insurer was required to pay for the reasonable and necessary medical services she provided to Claimant under Section 306(f.1) of the Act, and Insurer did not meet its burden of proving that it properly paid for the services she rendered to Claimant for his work injury. While recognizing that the Act and regulations refer to using appropriate Medicare Claim forms and Billing Codes, Provider argues that insurers are obligated to pay medical providers for treatment rendered for work-related injuries even if that treatment is not a compensated service under the Medicare program. (Provider's Br. at 5.) Provider argues an insurer cannot simply deny payment for treatment that does not have a Billing Code or where a nonspecific Billing Code is used, but must use the regulatory downcoding process. *Legion Ins. Co. v. Bureau of Workers' Comp. Fee Review Hearing Office (Ferrara)*, 42 A.3d 1151, 1152, 1154 (Pa. Cmwlth. 2012). Here, Provider asserts, she billed Insurer using the required form and provided written support for the Treatment, and Insurer presented no evidence that it

5

attempted to downcode, recode, or explain what the appropriate Billing Code for the Treatment would be. Provider argues, therefore, HO Torrey correctly found that Insurer did not meet its burden of proving that it properly reimbursed Provider for that Treatment.

We begin by addressing Insurer's jurisdictional argument, as it is a threshold issue. Insurer asserts that HO Torrey's jurisdiction in this matter was limited to a determination on the amount and/or timeliness of its payment of Provider's bills, and he could not address issues of liability. *Workers' Comp. Sec. Fund v. Bureau of Workers' Comp., Fee Review Hearing Office (Scomed Supply, Inc.)*, 195 A.3d 332, 333-34 (Pa. Cmwlth. 2018); *Catholic Health Initiatives*, 720 A.2d at 511-12. Insurer maintains HO Torrey had no jurisdiction to find Insurer liable for the Injections, for which Insurer argues it has no liability because the Injections are not FDA-approved for the purpose used by Provider. While we agree that whether a treatment is FDA-approved for a particular purpose may go to the issue of liability, we disagree this issue is properly raised in the fee review process. Rather, it should be raised within the framework of the Utilization Review (UR) process under Section 306(f.1)(1)(i) and (6) of the Act, as it is a challenge to the reasonableness and necessity of the treatment. 77 P.S. § 531(1)(i), (6) (requiring employers or insurers to pay for, *inter alia*, reasonable medical services provided to a claimant for a work-related injury but allowing for a challenge to the treatment as being not reasonable or necessary through the UR process); *see Barnhart v. Workers' Comp. Appeal Bd. (Tremont Borough)*[4] (Pa. Cmwlth., No. 66 C.D. 2017, filed Aug. 16, 2017), slip op. at 7-9 (affirming the denial of a claimant's challenge

---

[4] *Barnhart* is cited for its persuasive value in accordance with Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

6

to a UR determination that found a provider's use of a prescription medication in a manner not approved by the FDA not reasonable and necessary for the treatment of the claimant's work injury). There is no evidence in the record that Insurer has sought UR of the Injections, and it may not raise the reasonableness of the treatment in a proceeding focused on the timing and amount of its payment to Provider. Accordingly, there was no error in HO Torrey rejecting Insurer's challenge to his jurisdiction in this matter.

We now turn to the question of whether Insurer met its burden of proving that it properly reimbursed Provider for the Treatment she provided to Claimant on January 20, 2017, and March 17, 2017. Section 306(f.1)(1)(i) of the Act requires employers or their insurers to pay for medical services rendered to WC claimants. 77 P.S. § 531(1)(i). Providers of those services are required to submit their requests for payment on a standardized claim form, which should list their fee and use, where possible, and the standard Medicare Billing Codes for the treatment. 77 P.S. § 531(3)(vii) (stating that "[i]f a Medicare [Billing C]ode exists for application to a specific provider specialty, that code shall be used"); *Legion Ins.*, 42 A.3d at 1152, 1154 (noting the form requirement and that there are some treatments for which there are no Billing Codes under Medicare). "The insurer then calculates the 'proper amount for payment'" for the invoiced treatments. *Jaeger v. Bureau of Workers' Comp. Fee Review Hearing Office (Am. Cas. of Reading C/O CNA)*, 24 A.3d 1097, 1100 (Pa. Cmwlth. 2011) (citation omitted).

As occurred here, if an insurer does not pay a provider's bill, the provider may seek review of the insurer's decision, which is first addressed by the Fee Review Office. A party aggrieved by the Fee Review Office's decision on a medical fee review may request a de novo proceeding before a Hearing Officer. 34

7

Pa. Code § 127.259(a). "During a fee review hearing, the insurer bears the burden of proving, by a preponderance of the evidence, that it acted properly in downcoding or reimbursing the provider." *Jaeger*, 24 A.3d at 1101 (footnote and citation omitted). A preponderance of the evidence is the lowest evidentiary standard and is the equivalent to a "more likely than not" inquiry. *Id.* at 1101 n.10 (citing *Commonwealth v. Assorted Consumer Fireworks*, 16 A.3d 554, 558 n.10 (Pa. Cmwlth. 2011)). The hearing officer is the fact finder, and the Court "will not reweigh the evidence or substitute our credibility determinations for those of the hearing officer." *Id.* at 1101.

Insurer's arguments are premised on its contention that the Injections have no corresponding Billing Code under Medicare and the Billing Code used, 64999, has a corresponding WC reimbursement amount of $0.00. In the absence of a Billing Code approved by Medicare, Insurer asserts, it does not have to pay Provider for the Treatment she rendered to Claimant. However, the lack of a Medicare payment mechanism or Billing Code for a particular treatment does not relieve an insurer of its obligation to pay for treatment rendered to a claimant. Under Section 306(f.1)(3)(i) and (viii) of the Act, the Bureau's regulations, and this Court's precedent, where there is no designated Medicare Billing Code or Medicare payment mechanism for a particular treatment, an insurer must either downcode the treatment or pay for the treatment using the usual and customary charge method set forth in the Act. 77 P.S. § 531(3)(i), (viii); 34 Pa. Code §§ 127.102, 127.207; *Legion Ins. Co.*, 42 A.3d at 1154-55; *Jaeger*, 24 A.3d at 1100-01.

Section 306(f.1)(3)(viii) of the Act provides that, if an insurer believes a Billing Code used by a provider does not accurately reflect the treatment provided,

8

the insurer may downcode or change the provider's bill if the change is consistent with Medicare's guidelines, the insurer has sufficient information to do so, and the insurer consults with the provider about the proposed change. 77 P.S. § 531(3)(viii); *Legion Ins. Co.*, 42 A.3d at 1154-55; *Jaeger*, 24 A.3d at 1100-01. The downcoding process is governed by the Bureau's regulations, and that process must be followed prior to an insurer changing a provider's bill. 34 Pa. Code § 127.207.[5] Our precedent recognizes that, where a miscellaneous Medicare

---

[5] The regulations sets forth the following procedure for downcoding:

(a) Changes to a provider's codes by an insurer may be made if the following conditions are met:

    (1) The provider has been notified in writing of the proposed changes and the reasons in support of the changes.

    (2) The provider has been given an opportunity to discuss the proposed changes and support the original coding decisions.

    (3) The insurer has sufficient information to make the changes.

    (4) The changes are consistent with Medicare guidelines, the act and this subchapter.

(b) For purposes of subsection (a)(1), the provider shall be given 10 days to respond to the notice of the proposed changes, and the insurer must have written evidence of the date notice was sent to the provider.

(c) Whenever changes to a provider's billing codes are made, the insurer shall state the reasons why the provider's original codes were changed in the explanation of benefits required by § 127.209 (relating to explanation of benefits paid).

(d) If an insurer changes a provider's codes without strict compliance with subsections (a)--(c), the Bureau will resolve an application for fee review filed under § 127.252 (relating to application for fee review--filing and service) in favor of the provider under § 127.254 (relating to downcoding disputes).

**(Footnote continued on next page…)**

9

Billing Code is used for a treatment, an insurer can downcode that treatment using the procedures set forth in 34 Pa. Code § 127.207. *Jaeger*, 24 A.3d at 1100-01. In *Jaeger*, the provider used a "miscellaneous physical therapy" Medicare Billing Code to bill for certain treatments that do not have a specific Billing Code under Medicare. *Id.* at 1099. After following the procedures set forth in the regulations, the insurer downcoded the treatment to a type of physical therapy treatment that had a specific Billing Code. *Id.*

In addition to the downcoding provisions, the Act, in Section 306(f.1)(3)(i), provides that

> [i]f the prevailing charge . . . [or] reimbursement has not been calculated under the Medicare program for a particular treatment . . . the amount of the payment may not exceed eighty per centum of the charge most often made by providers of similar training, experience and licensure for a specific treatment . . . in the geographic area where the treatment . . . is provided.

77 P.S. § 531(3)(i). The Bureau's regulations echo this statutory mandate, stating that "[i]f a Medicare payment mechanism does not exist for a particular treatment," the amount paid to a "provider **shall** be either 80% of the usual and customary charge for that treatment . . . or the actual charge, whichever is lower." 34 Pa. Code § 127.102 (emphasis added).

In *Legion Insurance*, the provider submitted an invoice using a temporary non-Medicare Billing Code because the treatment being invoiced had no corresponding Medicare Billing Code. 42 A.3d at 1152, 1154. The insurer denied payment outright "because the code [used] was not in the Commonwealth's

---

(continued…)

34 Pa. Code § 127.207.

10

approved Fee Schedule." *Id.* at 1152. The provider filed a fee review, the initial determination was in the insurer's favor, and the provider requested a de novo hearing. Following that de novo hearing, the denial was reversed on the basis that the provider's use of that code was not fatal and that, under the regulations, the "[i]nsurer could have compensated [the provider] at 80% of the usual and customary charge for the treatment or downcoded [the] fee to an appropriate code in the approved Fee Schedule." *Id.* at 1153. Having not done either of those things, the Bureau found that the insurer did not establish that it properly denied payment. *Id.* The insurer appealed, and this Court affirmed, holding that the fact that there was no code in the Fee Schedule for the particular treatment did not render the use of the other code improper. *Id.* at 1154. Because the code used by the provider was recognized as one for that particular treatment, and the provider's invoice plainly identified the treatment provided, we held the insurer **could not summarily deny** payment but had to either downcode the treatment or pay 80% of the usual and customary charge. *Id.* at 1155.

Insurer acknowledges that the Injections do not have a specific Billing Code under Medicare and that, for this reason, Provider used the general or miscellaneous Billing Code in the WC Fee Schedule for "unlisted procedures of the nervous system." (Insurer's Br. at 11.) Although Insurer asserts that Provider "intentionally" used Billing Code 64999, Provider submitted a bill requesting payment for the Treatment, which would not have been necessary if Provider intended not to be paid. Instead, Provider's use of that code was like the non-Medicare Billing Code used by the provider in *Legion Insurance*, 42 A.3d at 1154, or the miscellaneous Medicare Billing Code used by the provider in *Jaeger*, 24 A.3d at 1099. Here, Provider used the Billing Code provided for unlisted

11

procedures to the nervous system (which the Injections were), the invoices plainly identified the specific Treatment she provided to Claimant, and she included with the invoices her office notes describing the Treatment. (R.R. at 19a-23a, 63a-64a.) Insurer has not presented evidence that it requested UR of the Treatment on the basis that it is not reasonable or necessary and, therefore, it is obligated to pay for the Treatment under Section 306(f.1)(1)(i) of the Act. Thus, upon its receipt of the invoices and materials from Provider, Insurer could not simply deny payment based on a lack of a Medicare mechanism for payment, but had to determine the amount of proper payment using either the downcoding process or the usual and customary charge method. *Legion Insurance*, 42 A.3d at 1155. Insurer, which bore the burden of proving its payment decision was proper, did not present evidence that it did either of these things, instead relying on the first level determinations' conclusion that the amount due to Provider was $0.00. This was not in accordance with the Act, the regulations, and this Court's precedent. Accordingly, because "Insurer failed to [downcode or pay the usual and customary charge] and, instead, tried to avoid paying [Provider], which [i]s impermissible under the Act and the regulation[s]," *id.*, we find no error in HO Torrey's conclusion that Insurer failed to meet its burden of proving that it properly reimbursed Provider for the January 20, 2017 and March 17, 2017 Injections.

Accordingly, the Order granting Provider's Requests and directing Insurer to pay Provider for the Injections is affirmed.

_____
**RENÉE COHN JUBELIRER,** Judge


Judge McCullough did not participate in this matter.

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

New York Marine and General : 
Insurance Company and Cannon : 
Cochran Management Services Inc., : 
                     Petitioners : 
                           : 
                v. :    No. 860 C.D. 2018
                           : 
Bureau of Workers' Compensation : 
Medical Fee Review Hearing : 
Office (Lam), : 
                    Respondent : 

## O R D E R

**NOW**, May 2, 2019, the Order of the Bureau of Workers' Compensation Medical Fee Review Hearing Office, entered in the above-captioned matter, is **AFFIRMED**.

 

_____

**RENÉE COHN JUBELIRER,** Judge