# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Richard L. Woodworth, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 907 C.D. 2015 |
| | : | Submitted: October 16, 2015 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| | : | |
| Respondent | : | |

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
SENIOR JUDGE COLINS                              FILED:  December 4, 2015

Richard L. Woodworth (Claimant), *pro se*, petitions for review of the April 27, 2015 order of the Unemployment Compensation Board of Review (Board), affirming and adopting the decision of the Referee to deny Claimant unemployment compensation benefits. The Board concluded that Claimant was ineligible for benefits due to willful misconduct under Section 402(e) of the Unemployment Compensation Law (Law)[1] because he was discharged from

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any week in which his or her unemployment is due to discharge for willful misconduct connected to his or her work.  43 P.S. § 802(e).

employment by Wal-Mart (Employer) for insubordination in accordance with Employer's progressive discipline policy. We affirm.

Claimant was last employed on January 6, 2015, as a full-time courtesy desk associate. (Record Item (R. Item) 17, Referee's Decision and Order, Finding of Fact (F.F.) ¶1.) Claimant filed for unemployment compensation and the Department of Labor and Industry (Service Center) issued a February 2, 2015 determination finding Claimant not ineligible for unemployment compensation because he had good cause for his actions. (R. Item 9, Notice of Determination.) Employer appealed and a hearing was held before the Referee on March 6, 2015. (R. Item 16, Hearing Transcript (H.T.).) At the hearing, Claimant was represented by counsel; Employer offered the testimony of the Human Resources Manager (HR Manager) and the Store Manager. The Referee issued a March 12, 2015 decision and order reversing the determination of the Service Center. (R. Item 17, Referee's Decision/Order.) Claimant appealed to the Board and the Board issued an April 27, 2015 order adopting and incorporating the Referee's findings and conclusions. (R. Item 19, Board Order.)

The findings of fact adopted by the Board are as follows:

---

2. [E]mployer has a progressive discipline policy that typically calls for three written warnings prior to discharge; those written warnings expire one year from administration; and the employer is permitted to skip steps in the progression depending on the severity of any incident and prior warnings.

3. [C]laimant suffers from asthma, and had previously had [Family and Medical Leave Act, 29 U.S.C. §§ 2601-2654] leave claims through [E]mployer due to that condition.

4. As an accommodation due to his medical condition, [E]mployer had provided [C]laimant with a mask to wear, including for use during times after the floor had been waxed.

2

5.      [C]laimant also had been provided with a nebulizer by his physician, and used a rescue inhaler.

6.      Both the HR manager and store manager had worked with [C]laimant in the past regarding his condition and accommodations.

7.      [C]laimant had been counseled both formally and informally regarding attitude problems and, specifically, insubordination and failure to follow directions from supervisors.

8.      [C]laimant was issued a first written warning under [E]mployer's policy in September 2014, as other prior written warnings had expired.[2]

---

[2] The HR Manager testified that the Employer's policy authorizes the skipping of steps in the progression depending upon the severity of the incident. (R. Item 16, H.T. at 11.)  The Store Manager testified that the second written coaching level was skipped because in the period from the last week of September 2014 into the first week of October 2014, there were numerous situations wherein Claimant was "just refusing to do what was being asked and just being insubordinate…to the supervisors." (*Id*., H.T. at 26.)

Employer's policy specifies:

> Coaching for Improvement
> ---
> You should be aware that levels of coaching may be skipped, depending upon the determination by your supervisor or manager of the appropriate level of coaching for the particular situation.
> ---
> Third Written coaching
> Your supervisor or manager may use a Third Written level of coaching to notify you that your job performance or conduct does not meet our expectations, when you have failed to correct a job performance or conduct issue despite a prior First and/or Second Written level of coaching, or if the job performance or conduct warrants a higher level of coaching.
>
> If you receive a Third Written level of coaching, your supervisor or manager will meet with you to discuss the unacceptable job performance or conduct at issue and explain the improvements that you must make and/or the actions that will be taken in light of the unacceptable job performance at issue.  You will be required to

9. [C]laimant was issued a third and final warning on October 8, 2014, due to insubordination.

10. In the third written warning, [C]laimant was advised that further infractions or incidents could lead to discharge from employment.

11. As a result of the third written warning in October 2014, [C]laimant prepared an action plan for himself, which included following the directions of supervisors and being respectful to supervisors and customers.

12. On January 2, 2015, [C]laimant was scheduled to work from 8:30 AM until 5:30 PM, and had been working at the courtesy desk for a significant period of time during that shift, as well as other registers at the store.

13. On January 2, 2015, [C]laimant was present at the courtesy desk for at least half an hour during his shift when there was no business need to be present at the courtesy desk, in addition to hours at a time when he worked at the desk assisting customers.

14. [C]laimant had not approached the HR manager or store manager during his entire shift on January 2, 2015, regarding breathing problems.

---

develop a plan or action to correct the problems or concerns that exist. Your manager will provide you with sufficient time during your regularly scheduled shift to develop your plan and will then meet with you to review the plan, discuss your decision regarding making the required improvements, and take appropriate action based on your decision.

…

Termination – If you receive a level of coaching and your job performance or conduct remains unacceptable, we may terminate your employment.

(R. Item 7, Employer Additional Separation Information)(Emphasis supplied.)

4

15. [C]laimant had not used the mask provided by [E]mployer for his asthma during his shift on January 2, 2015.

16. At approximately 4:50 PM on January 15, 2015, the HR manager asked [C]laimant to assist a customer with checkout.

17. [C]laimant refused, folding his hands on top of a box and stating, "I am not taking care of the customer. I have breathing problems."

18. [C]laimant subsequently walked away from the HR manager.

19. The HR manager assisted the customer herself, and subsequently discussed the situation with [C]laimant at approximately 5:15 PM.

20. During that conversation, [C]laimant stated that he had worn his mask that day, but it did not help, and also that he had not been at the courtesy desk all day.

21. [C]laimant was discharged effective January 6, 2015, due to violation of [E]mployer's progressive discipline policy and insubordination.

(R. Item 17, Referee's Decision/Order, F.F. ¶¶ 2-21.) Testimony at the Referee's hearing established that the floors in the vicinity of the courtesy desk had been waxed on the evening prior to the day of the final incidence of insubordination, and that Claimant indicated to the HR Manager after the incident that triggered his dismissal that he could not be around that area without experiencing breathing problems. (R. Item 16, H.T. at 14.) In the decision and order affirmed by the Board, the Referee determined that Claimant's conduct on January 2, 2015 was clearly insubordination toward the HR Manager, and that such conduct constituted a violation of the final warning; as such, Employer was found to have met its burden, and benefits were denied in accordance with the provisions of Section

5

402(e) of the Law. All issues of credibility were resolved in favor of Employer, as follows:

> [Employer] presented credible testimony and evidence that [C]laimant had not approached management on January 2, 2015, regarding breathing problems or issues with his mask, nor did [C]laimant actually wear his mask on that day. The Referee does not find credible [C]laimant's testimony that he was having significant breathing problems that day, nor that the reason he refused to help the customer in question was due to breathing problems. Clearly, [C]laimant had spent a significant portion of the day at the courtesy desk, including times when his presence was not required for a business purpose. The Referee also does not find credible [C]laimant's testimony that he volunteered to help the customer at issue on a different register, which the HR manager specifically denied.

(R. Item 17, Referee's Decision/Order, Reasoning.) Claimant appealed the Board's order to this Court.[3]

Willful misconduct is defined as: (1) an act of wanton or willful disregard of the employer's interest; (2) a deliberate violation of the employer's rules; (3) a disregard of standards of behavior which the employer has a right to expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer. *Grieb v. Unemployment Compensation Board of Review*, 827 A.2d 422, 425 (Pa.

---

[3] Our scope of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704; *Smithley v. Unemployment Compensation Board of Review*, 8 A.3d 1027, 1029 n.5 (Pa. Cmwlth. 2010). Whether a claimant's actions constitute willful misconduct is a question of law over which this Court has plenary review. *Scott v. Unemployment Compensation Board of Review*, 105 A.3d 839, 844 (Pa. Cmwlth. 2014), *appeal denied*, __ A.3d __ (Pa., No. 22 WAL 2015, filed August 21, 2015).

2003); *Caterpillar, Inc. v. Unemployment Compensation Board of Review*, 703 A.2d 452, 456 (Pa. 1997). The burden of proving willful misconduct is borne by the employer, *Scott v. Unemployment Compensation Bd. of Review*, 36 A.3d 643, 647 (Pa. Cmwlth. 2012), and when the alleged willful misconduct involves the violation of a work rule or policy, the employer must prove its existence, its reasonableness, and the fact of the claimant's violation. *Lewis v. Unemployment Compensation Bd. of Review*, 42 A.3d 375, 377 (Pa. Cmwlth. 2012); *Brady v. Unemployment Compensation Board of Review*, 539 A.2d 936, 938 (Pa. Cmwlth. 1988). Once an employer has proven the violation of the work rule or policy, the burden then shifts to the claimant to prove that he or she had good cause for the violation. *Bell Socialization Services v. Unemployment Compensation Board of Review*, 74 A.3d 1146, 1147 (Pa. Cmwlth. 2013). The claimant establishes good cause where he or she demonstrates that the actions are justified or reasonable under the circumstances. *Id*. at 1147-48.

Here, Claimant admits that he refused the HR Manager's request that he process a customer's return of merchandise at the courtesy desk; however, he asserts that he had good cause to do so because of his medical issue, and further maintains that he offered to handle the return at another cash register. Claimant urges this Court to review the hearing transcript, as he contends that it will support his version of the facts. He asserts that the Referee ignored his testimony that Employer refused to grant the accommodation he and his physician requested, and that Employer falsified an action plan that it alleged Claimant prepared; however he offers no evidence on these matters other than his own testimony. Claimant also contends that because Employer witnesses did not observe him throughout the

entire period he worked on January 2, 2015, they were not qualified to testify as to time he may have spent at the courtesy desk.[4]

However, the Board unequivocally rejected Claimant's testimony as not credible, and found specifically that Claimant *did not* approach the HR Manager or the Store Manager on January 2, 2015 regarding breathing problems or issues with his mask, and *did* spend significant portions of that day at the courtesy desk where the offending wax smell would have been present, even during a period when he would not have been required to be in the area of the courtesy desk. (R. Item 17, Referee's Decision/Order, F.F. ¶¶ 13-14, Reasoning; R. Item 19, Board's Order.) Claimant acknowledged at the hearing that he had been back and forth between the courtesy desk and the front end of the store for approximately one hour after he clocked in for work in the morning on January 2, 2015, and also that he spent approximately two hours working at the courtesy desk between noon and 2 P.M. (R. Item 16, H.T. at 40-41.) In addition to the testimony of Employer's witnesses, Employer offered printouts of all transaction receipts completed by Claimant on January 2, 2015, including all transactions completed at the courtesy desk register, as well as a timed snapshot from Employer's surveillance system showing Claimant at the courtesy desk for approximately thirty minutes prior to the 4:50 P.M. incident; the surveillance system shows that Claimant is not wearing a mask. (R. Item 16, H.T. at 25.) The Board also found not credible both

---

[4] Claimant also argues that the Board's order affirming the Referee is improper because the Referee accepted evidence that was objected to by Claimant's counsel as hearsay. The record clearly indicates, however, that in each instance where Claimant's counsel at the hearing objected to the admission of evidence, on the ground that the authors of several documents offered into evidence were not present at the hearing and could not be cross-examined regarding what they wrote, the objections were sustained. (R. Item 16, H.T. at 5-6.) There is substantial evidence in the record to demonstrate that Claimant was ably represented at the hearing, and testified with the full assistance of his counsel.

8

Claimant's testimony that he offered to take the customer to another register to provide service, and his testimony that the reason he refused to help the customer was because he was having significant breathing problems. (R. Item 17, Referee's Decision/Order, Reasoning; R. Item 19, Board's Order.)

The Store Manager testified that he had spoken to Claimant at least five times about his insubordination and failure to follow directives, and stated that the termination from employment came following receipt of his third written warning and despite the performance coaching Claimant had previously received; he indicated that he had always worked with Claimant regarding his asthma, including securing the breathing apparatus Claimant had requested. (*Id.*, H.T. at 30-34.)

We have long held that in unemployment compensation proceedings, the Board, as the ultimate finder of fact, is empowered to resolve conflicts in the evidence and to determine the credibility of witnesses. *Brannigan v. Unemployment Compensation Board of Review*, 887 A.2d 841, 843 (Pa. Cmwlth. 2005). We discern no error in the Board's conclusion that Claimant was terminated from employment for willful misconduct and that he did not establish good cause for his insubordination in violation of Employer's progressive discipline policy. Accordingly, we affirm the order of the Board.

 

 

**JAMES GARDNER COLINS, Senior Judge**

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Richard L. Woodworth,                      :
                                           :
                    Petitioner             :
                                           :
        v.                                 :    No. 907 C.D. 2015
                                           :
Unemployment Compensation                  :
Board of Review,                           :
                                           :
                    Respondent             :

# O R D E R

AND NOW, this 4th day of December, 2015, the Order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby AFFIRMED.

_____
**JAMES GARDNER COLINS, Senior Judge**